# EXHIBIT

# "A"

Copy
2312\10

# IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, STATE OF TENNESSEE

SANDRA LEE,
    PLAINTIFF,

v.

RUBIN LUBLIN TN, PLLC, and
BANK OF AMERICA, NA,
    DEFENDANTS.

2017 FEB 10 PH 3: 50



)
)
)
)
) Case No.    17C363
)
)
)

## COMPLAINT FOR DAMAGES

Comes now Sandra Lee by and through counsel, and hereby petitions this Honorable Court for an Order declaring the Defendants conspired to commit fraud and constructive fraud the February 20, 2014 and August 26, 2014 foreclosure sales of her residence, and granting other relief under the Tennessee Consumer Protection Act. Ms. Lee brings this suit under common law fraud, Breach of contract, and pursuant to the provisions of Tenn. Code Ann. §29-14-101 *et. seq.* and an other applicable state law remedies. Ms. Lee would state to the Court as follows:

### Parties

1.    The Plaintiff Ms. Sandra Lee ("Ms. Lee") is a residence and citizen of Davidson County, who at one time resided at 1244 Mary Helen Drive, Nashville, Tennessee. She is or was a co-owner of 1244 Mary Helen Drive with William E. Kantz ("Mr. Kantz");

2.    The Defendant Rubin Lublin TN, PLLC ("Rubin Lublin") was the alleged Substitute Trustee acting in behalf of Bank of America, NA on February 20, 2014 and on August 26, 2014 when it conducted the fraudulent foreclosure sales. Its principal office is located at 119 South Main Street, Suite 403, Memphis, Tennessee 38103, and is Registered Agent is Natalie Brown, 119 South Main Street, Suite 500, Memphis, Tennessee 38103;

3.    Bank of America, NA ("Bank of America" or "BOA") on February 20, 2014 and August 26, 2014, or the entity responsible for and/or directing Rubin Lublin as Substitute Trustee on February 20, 2014. Its address is 3740 Davinci Court, Suite 150, Peachtree Corners, Georgia

1



30092, and its mailing address for legal process is Bank of America, Legal Order Processing, P.O. Box 15046, Wilmington, Delaware 19850-5047;

<b>FACTS</b>

4.      Moonlighters Enterprises, Inc. ("Moonlighters") is a Tennessee corporation with it principal address at 44 North Second Street, Suite 503, Memphis, Tennessee 38103. It is believed it was acting as Rubin Lublin's agent at all time relevant to this matter;

5.      On or about December 20, 2007, Ms. Lee and Mr. Kantz entered into a Note and Deed of Trust secured by 1244 Mary Helen Drive with Bank of America, NA. (Exhibit A);

6.      Sometime after 2007 Ms. Lee and Mr. Kantz parted ways and Ms. Lee found other living accommodations;

7.      Shortly after 2007 Ms. Lee contacted Bank of America seeking to be removed from the underlying mortgage. At all times BOA was aware of Ms. Lee's physical, mailing, and email address, and her telephone number. During this time Ms. Lee maintained a demand deposit account with BOA, and it sent monthly statements to her separate address;

8.      Sometime around 2013, Bank of America notified Mr. Kantz it was accelerating the Note. BOA chose not to send Ms. Lee a "notice of acceleration," a "notice of default," or any other notices related to the Note;

9.      On or about January – February 2014, the Defendants allegedly caused to be published in a newspaper of local circulation (The *Tennessee Tribune*) notice of the foreclosure of Ms. Lee and Mr. Kantz's real property at 1244 Mary Helen Drive in Nashville, Tennessee;

10.      Written sale notice was not sent to Mr. Kantz nor the junior mortgage holders for the foreclosure sale;

11.      Despite actual and constructive knowledge of Ms. Lee's current mailing address for several years, Bank of America intentionally chose not to send a written notice to her concerning the foreclosure sale;

2

Copy

12.     On or about February 18, 2014, Mr. Kantz first discovered the Property was about to be foreclosed upon and began taking immediate steps to prevent the same. He did not notify Ms. Lee of his discovery nor did he realize she had not been given separate notice;

13.     The foreclosure sale was scheduled for February 20, 2014, at 11:00 AM on the front steps of the Davidson County Courthouse, Nashville Tennessee;

14.     Mr. Kantz appeared at the courthouse prior to the designated time and waited;

15.     At approximately 10:50 AM, the only three (3) people standing outside the Courthouse abruptly left;

16.     At 11:00 AM, no one appeared in behalf of Rubin Lublin to "cry the sale" at the allotted time and place. Rubin Lublin later falsely claimed Moonlighters' agent was present to cry the sale, but no such person is visible on the courthouse's surveillance video;

17.     Mr. Kantz waited for a representative of Rubin Lublin to eventually arrive, but no one ever appeared;

18.     Surveillance tapes from the area and Mr. Kantz's personal video recordings show no foreclosure sale was conducted on February 20, 2014;

19.     That same day, FYI, a junior lienholder, made inquiries to Rubin Lublin about why no one appeared and the sale was not cried;

20.     On February 20, 2014 at 4:09 PM, Bret Chaness, an attorney and representative of Rubin Lublin claimed via email "I've been assured that the sale was indeed cried;"

21.     Rubin Lublin was either ignorant of the facts, or lying, about the foreclosure sale being conducted, or an agent of Moonlighters falsely "assured" Mr. Chaness about the same;

22.     Mr. Chaness knew or should have known the sale had not been cried when he intentionally made this materially false statement;

3

23.     On February 28, 2014, Rubin Lublin's employee, attorney Victor Kang[1], executed a Substitute Trustee's Deed falsely stating a proper sale had been cried. Mr. Kang falsely identified himself as "Member, Rubin Lublin TN, PLLC:" (Exhibit B);

24.     On information and belief, Bank of America conveyed this property at a profit after February 20, 2014, and thus benefitted from its own fraudulent conduct;

25.     On February 25, 2014, attorney Chaness sent an email in response to FYI's inquiry (through counsel) as to why no one was present to cry the sale. When asked why no sale took place Mr. Chaness became defensive and stated in part:

> If you have this evidence [of no crier], please provide it. Otherwise, there is nothing further that we will be doing with regard to this sale. (Exhibit C);

26.     Mr. Chaness did not, and nor has Bank of America, **ever** been able to identify its own employee or agent that *allegedly* appeared and cried the sale. (This is not surprising as video records shows no one was present). Moreover, Mr. Chaness has never been able to identify the person from Moonlighters he allegedly hired to appeared to cry the sale;

27.     The Deed of Trust's Paragraph 22 specifically requires that the property be sold at the foreclosure sale. (Exhibit A);

**If Lender invokes the power of sale, Trustee shall … sell the Property** at public auction to the highest bidder at the time and under the terms designated in the notice of sale. (bold added).

And,

Trustee **shall deliver to the purchaser** [a] Trustee's deed conveying the Property without any covenant of warranty, expressed or implied. (bold added).

28.     After the February 20, 2014 sale, Bank of America claims it sold the Property property to FHLMC despite it (and its agents) not actually having conducted a foreclosure sale;

29.     On March 6, 2014, Rubin Lublin recorded a Substitute Trustee's Deed in the Davidson County Register of Deeds (Exhibit B). In the Substitute Trustee's Deed it claimed:

---

[1] Mr. Kang is also a licensed attorney in Tennessee (Since 2013, BPR# 31632) and Georgia since 2007.

Case 3:17-cv-00500   Document 1-1   Filed 03/09/17   Page 5 of 71 PageID #: 9

Copy

WHEREAS, the Substitute Trustee at the time, place and date specified in said notices appeared and offered the property for sale, and after opening the floor for competitive bids, sold said Property to **Bank of America, N.A.** at the price of **Three Hundred Ninety-Eight Thousand One Hundred Twenty-Six Dollars and 15//100 ($398,126.15)** this being the highest, last, and best bid; and,

WHEREAS, **Bank of America, N.A.,** as successful purchaser at said sale, transferred and assigned its bid to FEDERAL HOME LOAN MORTGAGE CORPORATION.

NOW, THEREFORE, Rubin Lublin TN, PLLC, Substitute Trustee as aforesaid, in consideration of the premises and the sum of Three Hundred Ninety-Eight Thousand One Hundred Twenty-Six Dollars and 15//100 ($398,126.15) to me in hand paid, the receipt of which is hereby acknowledged, by these presents do transfer and convey unto **FEDERAL HOME LOAN MORTGAGE CORPORATION ("Grantee"),** its successors and assigns, all right, title and interest in and to the Property...

(Exhibit B, page 2) (bold in original, underline added).

30.     On February 27, 2014, attorney Chaness sent an email in response to a request

from FYI as to why no one was present to cry the sale. The email stated in part:

Once I look into the matter further I will reply to your email. And I am telling you [FYI's attorney] that you can't speak with my client **because they are represented an attorney in this matter (my firm),** not because you are an attorney. (Exhibit D) (bold added);

31.     On March 7, 2014 at 12:59 PM, attorney Chaness sent an email stating:

My office has conducted further investigation into the sale and have discovered **no irregularities whatsoever.** The individual who cried the sale has assured us that the sale was cried. (Exhibit E) (bold added);

32.     Two (2) hours later, at 2:37 PM, attorney Chaness sent a threatening email:

You cannot contact **my client independently** and any attempt to do so will result in my firm filing a complaint against you with the Board of Professional Responsibility. (Exhibit F) (Bold Added);

33.     There is no recorded or disclosed document showing Bank of America

transferred/assigned the Note at any time to any entity prior to August 26, 2014;

34.     On or about June 27 and July 11, 2014, Mr. Kantz made a Qualified Written

Requests (under RESPA) to Bank of America for information regarding his loan.

35.     On July 18, 2014, Bank of America responded:

5



> Please note our records reflect that the **subject property was sold** at the foreclosure sale held on February 20, 2014.
>
> (Exhibit G, page 1, 2nd paragraph) (Bold added).

36.    Despite the above representations by Bank of America, and its attorneys, in August 2014 it published a second Notice of Foreclosure which stated:

> WHEREAS, the beneficial interest of said Deed of Trust was last transferred and assigned to BANK OF AMERICA, N.A. **who is now the holder of said debt**; and… (bold added).

And,

> WHEREAS, the sale is being conducted pursuant to the authority granted by the June 27, 2014, Minute Entry of the United States District Court for the Middle District of Tennessee, Case no, 3:14-01113. (Exhibit H)

37.    Although not a party, the Federal Home Loan Mortgage company ("FHLMC") knew or should have known on August 4, 2014 it had no right to purchase the <u>Note</u> from Bank of America, and any such transfer/purchase clearly violated the Deed of Trust, and far-exceeded the Substitute Trustee's legal authority;

38.    After February 20, 2014, FHLMC never conveyed the Property back to Bank of America;

39.    As shown above, the Deed of Trust clear terms <u>only</u> allow Bank of America to <u>sell</u> the Property once it has "invoked the power of sale…" ("If Lender invokes the power of sale, Trustee shall … sell the Property at public…") (Exhibit A);

40.    On June 27, 2014, a case management conference was held in a Mr. Kantz's prior case (14-0113) at which time the Court directed Mr. Kantz would be allowed thirty (30) days to repurchase his home (the "Property"), and if unable, the Defendants would have thirty (30) days to arrange the re-noticing of the foreclosure sale.  The Court's Minutes state:

> … Case will be stayed for a total of sixty (60) days, as set forth on the record in open court. Plaintiff will have thirty (30) days to **arrange the repurchase of the subject property**; if Plaintiff does not do so, Defendants will then have an additional thirty (30) days to **arrange notice and sale of the property**. Parties

6

Copy

will then file additional briefing addressing the mootness of certain claims. (bold added).

41.     At the time this Order was entered FHLMC, Rubin Lublin TN, PLLC and Rubin Lublin LLC were the only Defendants in Mr. Kantz' case. (Bank of America was not a Defendant in Mr. Kantz's case);

42.     Once the Property was allegedly sold to FHLMC in February, the Deed of Trust was (or should have been pursuant to Tennessee law) released and Bank of America's Substitute Trustee no longer had any authority to take any action with regard to the Property;

43.     Despite the requirement the **Property** be sold, Bank of America claims it sold the **Note** to FHLMC;

44.     On or about June 27 and July 11, 2014, Mr. Kantz made a Qualified Written Requests (under RESPA) to Bank of America for information regarding his loan.

45.     On July 30, 2014, Blank Rome, attorneys for Bank of America responded:

Pursuant to 15 U.S.C. § 1641(f)(2), the current **owner of the note** is the Federal Home Loan Mortgage corporation, which has an address of .... The current servicer of the Loan is Bank of America ...

(Exhibit I, p. 2, 3rd paragraph) (bold added).

46.     On August 4, 2014, Bank of America responded:

[In accordance with] Section § 1641(f), the current **owner of the note** is:
**Federal Home Loan Mortgage Corporation**
Attn: Consumer Care
8200 Jones Branch Drive
McLean, Virginia 22102

(Exhibit J, p. 1, 3rd paragraph) (bold added).

47.     On September 16, 2014, Bank of America's agent, Blank Rome sent a letter stating:

... as indicated in the prior response, the **Federal Home Loan Mortgage Corporation was and remains the owner** of the note pursuant to ...

(Exhibit K, p. 2, 3rd paragraph) (bold added).

And,



As indicated in Bank of America's correspondence to you dated September 4, 2014, the **Federal Home Loan Mortgage is the investor in the Loan, which owns the note** and is the party entitled to payment...
(Exhibit K, p. 2, 4th paragraph) (bold added).

48.    Despite the above representations by Bank of America, and its attorneys, in August 2014 it published a Notice of Foreclosure which stated:

WHEREAS, the beneficial interest of said Deed of Trust was last transferred and assigned to BANK OF AMERICA, N.A. **who is now the holder of said debt;** and... (bold added).

And,

WHEREAS, the sale is being conducted pursuant to the authority granted by the June 27, 2014, Minute Entry of the United States District Court for the Middle District of Tennessee, Case no, 3:14-01113. (Exhibit H)

49.    Bank of America had actual knowledge for several years that Ms. Lee did not reside at the 1244 Mary Helen address. Despite actual and constructive knowledge of her current address, phone number and email address, Bank of America chose not to advise her of the default, acceleration, or either foreclosure sale;

50.    FHLMC knew or should have known on August 4, 2014 it had no right to purchase the Note from Bank of America, and any such transfer/purchase clearly violated the Deed of Trust, and exceeded the Substitute Trustee's legal authority;

51.    On July 28, 2014, Mr. Kantz sent a letter to Rubin Lublin demanding to know under what authority it had to foreclosure on his property. Rubin Lublin did not respond to this letter;

52.    Rubin Lublin was not an agent, employee or representative of FHLMC at the time of the August 26, 2014 foreclosure sale. Rubin Lublin did not have a written document giving it authority to act on FHLMC's behalf. (No Notice of Substitute Trustee showing FHLMC appointing Rubin Lublin as Substitute Trustee has been recorded in the Register of Deed's Office in Davidson County);

8

53.     On August 26, 2014, Rubin Lublin conducted a foreclosure sale on behalf of Bank of America, and entity whose Note had been satisfied and that did not own the Property. Attorney Bret Chaness was the sale crier on behalf of Bank of America;

54.     On September 2, 2014, Rubin Lublin's employee, attorney Victor Kang, executed a Substitute Trustee's Deed asserting a proper sale had been cried/conducted on August 26, 2014. (Exhibit L).  Mr. Kang identified himself as "member of Rubin Lublin LLC, the Member of Rubin Lublin TN, PLLC." (underline added);

55.     Mr. Kang's "authority" in the March 2014 Substitute Trustee's Deed differs from the September 2, 2014 deed created to cover up the earlier fraud perpetrated on Ms. Lee and Mr. Kantz. (see Exhibit B, in which Mr. Kang *falsely* identified his title and himself as a "Member" of Member of Rubin Lublin TN, PLLC);

56.     The Tennessee Secretary of State's website shows Rubin Lublin TN PLLC only has one (1) member, and according to the September 2, 2014 Substitute Trustee's Deed, and that member is Rubin Lublin LLC, not Mr. Kang. (Exhibit M);

57.     The September Substitute Trustee's Deed further falsely claims Bank of America, N.A. is or was the holder of the Note in August 2014;

58.     Ms. Lee did not learn of any the Defendants' above-referenced actions until about 2016.  The Defendants never contacted Ms. Lee about any issue related to the February or August 2014 foreclosure sales.

## COUNT I – FRAUD AND CONSTRUCTIVE FRAUD

59.     Ms. Lee incorporates by reference the facts and allegations in the previous paragraphs 1 - 58 as if fully set forth herein;

60.     Ms. Lee prays the Court determine and hold that Rubin Lublin, acting as Substitute Trustee, intentionally failed to properly execute its duties under the Deed of Trust;

9

61.     Ms. Lee prays the Court determine and hold that Rubin Lublin, acting as Substitute Trustee, intentionally failed to appear and properly cry the February 20, 2014, foreclosure sale rendering the same invalid;

62.     Ms. Lee prays the Court determine and hold the February and August fraudulent foreclosure sales are invalid and the result of the Defendants' duplicitous conduct, and return the residence to her;

63.     Ms. Lee prays the Court determine and hold the Defendants committed intentional and willful fraud by their failure to comply with the Deed of Trust's requirements as to notice, proper crying of the sale, and serial post-sale deception concerning the sale;

64.     Ms. Lee prays the Court find the Defendants and their agent Bret Chaness (and any of Rubin Lublin's agents) repeated misrepresentations concerning whether the sale was conducted were fraudulent;

65.     The Defendants' fraudulent conduct allowed Ms. Lee's real property to be sold without notice and an opportunity for her to redeem the property;

66.     That the Defendants willful and intentional failure to give Ms. Lee notice of the Note's acceleration, the Note's Default, and of the February 20, 2014 and August 26, 2014 foreclosure sales, was willful and intentional, and as a result of said conduct, Ms. Lee lost her Property as of February 20, 2014;

Specific Fraud in the February 20, 2014 Foreclosure Sale

67.     Rubin Lublin committed intentional and willful fraud by their failure to comply with the Deed of Trust's requirements, including, but not limited to notice, proper crying of the sale, pre- and post-sale deception concerning the alleged sale, and the immediate sale/transfer of interest in the properly to FHLMC (an insider) at a prices grossly below its non-fair market value, but at a profit for itself;

68.     The fraudulent acts include:

10

- The failure to send notice to all known lienholders and obligators;
- The failure to properly advertise the sale
- The failure to conduct the sale as advertised or at all;

• The post-sale misrepresentations made by Bank of America, and/or Rubin Lublin by attorney Bret Chaness concerning whether the sale actually took place;

• The post-sale misrepresentations made by Bank of America, and/or Rubin Lublin by attorney Victor Kang concerning whether the sale actually took place;

• The filing and recording of a Substitute Trustee's Deed that violated the Deed of Trust's clear terms by purporting to assign the Note instead of the required transfer of the actual property;

• The filing and recording of a Substitute Trustee's Deed signed by Victor Kang who was not a Member of Rubin Lublin, and who did not have authority to transfer the property:

• Refusal of the Substitute Trustee, Bret Chaness, to answer any questions concerning the prior faux-foreclosure sale despite having a duty to be truthful to Mr. Kantz as settlors of the Deed of Trust; and,

• Rubin Lublin's agent, attorney Bret Chaness, committed a fraud when he intentionally and repeatedly lied to him (through his counsel) about the foreclosure sale having actually being conducted, and by making no attempt to correct his misrepresentation when the facts became known. Mr. Chaness further threaten counsel with frivolous complaints the Board of Professional Responsibility if he attempted to contact Bank of America in his capacity as a lienholder – an action that he had every right to do;

69. The entire February 20, 2014 foreclosure sale appears to be a sham, orchestrated to allow Bank of America to purchase the property for $398,126.15, then sell it to FHLMC for approximately $420,000, pocketing the $22,000.00 difference, while later demanding Mr. Kantz pay the entire remaining Note balance;

70. Me. Lee requests actual damages in the amount of the fair market value of her residence, additional compensatory as may be proven at trial, and reasonable attorney's fees and costs as permitted under the Deed of Trust and Tennessee law;

71. At all times the Defendants new they were deceiving Ms. Lee, Mr. Kantz and the general public when they fraudulently recorded Substitute Trustee's Deeds which they knew misrepresented material facts concerning the Property and Note's owner, the right of the Substitute Trustee to act, and to whom the Property was allegedly transferred;

11



72. Ms. Lee requests actual damages of $160,000.00, statutory and punitive damages and reasonable attorney's fees and costs as permitted under Tennessee and federal law;

## COUNT II - BREACH OF CONTRACT / WRONGFUL FORECLOSURE

73. Ms. Lee incorporates by reference the facts and allegations in paragraphs 1 - 72 as if fully set forth herein;

74. Bank of America, itself and through its agents, Rubin Lublin and Moonlighters intentionally and willfully breached the Deed of Trust by failing to comply with the Deed of Trust's clear and exact post-invocation of the deed's "power of sale" provisions. These violations at the February 20, 2016 and August 26, 2014 foreclosure sales, include but are not limited to, failure to give notice of the Note's default, failure to give notice of the Note's acceleration, and failure to give notice of the pending foreclosure sale, non-existent and/or improper crying of the sale, post-February sale refusal to identify the true Note holder, and post-sale misrepresentation concerning the sale. Ms. Lee was further denied her rights under the Deed of Trust's ¶¶ 19 & 22 which grants her the right to "cure defaults" and "reinstate" the Note after acceleration;

75. Despite actual and constructive knowledge of Ms. Lee's physical and mailing address at all times, Bank of America and Rubin Lublin intentionally chose not to give her notice of the default, acceleration, and of the pending foreclosure sales on February 20, 2014 and August 26, 2014;

76. As Bank of America did not comply with the Deed's notice requirements it did not have authority under the Deed of Trust to invoke the power of sale. Therefore, both the February 20 2014 and August 26, 2014 foreclosure sales were invalid;

77. Despite a Note balance of approximately $461,259.51, Bank of America secretly sold the property to the Federal Home Loan Mortgage Corporation for $398,126.15 at a secret non-public sale, leaving an improper deficiency balance;

12

Copy

78.     Bank of America and Rubin Lublin's actions violate the good faith and fair dealing requirement found in all Tennessee contracts;

79.     Bank of America's intentional failure to provide Ms. Lee with the notice of default, notice of acceleration, and pending foreclosure sales render both foreclosures wrongful;

80.     Ms. Lee requests actual damages of $250,000.00, punitive damages, return of her residence, and reasonable attorney's fees and costs as permitted under Tennessee law.

## COUNT III - VIOLATION OF TENNESSEE CODE ANNOTATED § 47-18-104(b)(39) (The Tennessee Consumer Protection Act)

81.     Ms. Lee incorporates by reference the facts and allegations in paragraphs 1 - 80 as if fully set forth herein;

82.     Tennessee Code Annotated § 47-18-104, commonly known as the Tennessee Consumer Protection Act, makes it a deceptive practice or act to:

> (a) Unfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices and are Class B misdemeanors.
>
> (b) The following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:
>
> ...
>
> **(39) Representing that a person, or such person's agent, authorized designee or delegee for hire, has conducted a foreclosure on real property, when such person knew or should have known that a foreclosure was not actually conducted on the real property;**

83.     Bank of America, and through its agents, Rubin Lublin and Moonlighters misrepresented to Ms. Lee and to the public at large it had "conducted a foreclosure on real property," when it had actual and constructive knowledge it did not conduct a sale on February 20, 2014, and had no authority to conduct a sale on behalf of Bank of America on August 26,

13

2014. Representing that these two foreclosure sales were conducted properly are *per se* violations of the Tennessee Consumer Protection Act;

84.     Bank of America itself, and through its agents, Rubin Lublin and Moonlighter actions in continuing to affirmatively misrepresent to Ms. Lee and Mr. Kantz, his counsel and the Court are *per se* violations of the Tennessee Consumer Protection Act;

85.     Bank of America itself, and through its agent, Rubin Lublin actions in conducting the February 20, 2014 and August 26, 2014 foreclosure sale and continuing to affirmatively misrepresent to Ms. Lee and Mr. Kantz, his counsel and the Court material facts concerning the sale are criminal acts under Tennessee law;

86.     Ms. Lee prays the costs and attorney's fees be awarded under the Tennessee Consumer Protection Act;

87.     Ms. Lee further requests actual damages of $250,000.00, and punitive damages as permitted under the Tennessee Consumer Protection Act and/or the trebling of her compensatory damages, and reasonable attorney's fees and costs as permitted under Fair Debt Collection Practices Act;

### COUNT IV - CONSPIRACY

88.     Ms. Lee incorporates by reference the facts and allegations in paragraphs 1 - 87 as if fully set forth herein;

89.     The facts and allegations above show the Defendants acted together as an association of entities acting in their own selfish interests, and that they acted together to accomplish by concert an unlawful purpose and/or a lawful purpose not in itself unlawful by unlawful means. as an association of entities acting in their own selfish interests;

90.     After Bank of America and Rubin Lublin's fraudulent February 20, 2014, foreclosure sale and its expedited profiteering by transferring the Property to insider-FHLMC was exposed, the Defendants conspired to cover up the faux-sale, repeatedly deceived Mr. Kantz

14

Copy

and his counsel concerning the sale having been conducted, and then knowingly recording false documents with the Davidson County Register of Deeds. The Defendants conspired to not advise Ms. Lee of any details of the default, acceleration, and sales, and then recorded documents affecting her ownership in the Property which they knew were false;

91.    After recording a Substitute Trustee's Deed it knew contained Victor Kang's material misrepresentations, the Defendants continued to assert the February sale was actually cried when it has known all along this was a lie;

92.    Rubin Lublin's employee, attorney Bret Chaness, conspired with his employer(s) and his clients' Bank of America, Rubin Lublin and Moonlighters to repeatedly perpetrate a lie upon the public and Plaintiff by continuing to falsely assert the February 20, 2014 was actually cried;

93.    The Defendants conspired to conduct a mis-advertised August 26, 2014 foreclosure sale to prevent Ms. Lee, "interested parties" and third parties from participating so the alleged Note holder could purchase the Property at a discount and resell the same at a profit;

94.    The Defendants also conspired to engage in the above acts, violating Tennessee as outlined herein, which include a) Fraud; b) Breach of Contract; and c) Violating the Tennessee Consumer Protection Act;

95.    Ms. Lee has been damaged as shown in the counts above and hereby demands compensatory damages of $250,000.00, statutory, and punitive damages, and reasonable attorney's fees and costs.

**WHEREFORE, PREMISES CONSIDERED**, Ms. Lee prays for the following relief and judgments:

1.    That service of process issue and be served upon the Defendants pursuant to the

15

Rules of Civil Procedure, and that they be required to appear and answer according to the same;

2.    For an Order finding the Defendants guilty of fraud and constructive fraud for the wrongful foreclosure and misrepresentation related to the faked February 20, 2014 and fraudulent August 26, 2014 foreclosure sales;

3.    For an Order declaring the Defendants' conduct in foreclosing on the residence violated the Tennessee Consumer Protection Act and award compensatory damages of $250,000.00, statutory damages as permitted, and treble/punitive damages under the Tennessee Consumer Protection Act and common law, as well as attorney's fees and costs as allowed by the T.C.P.A.;

4.    For an Order awarding compensatory damages of $250,000.00 and treble/punitive damages for fraud; and,

5.    For whatever relief is equitable and just.


Respectfully submitted:


James D. R. Roberts, Jr. / Brian I. Long
CREDITOR LAW CENTER / f/k/a Roberts & Associates
P. O. Box 331606
Nashville, Tennessee 37203-1606
(615) 242-2002 office
(615) 242-2042 facsimile
Jim.Roberts@CreditorLawCenter.com
Brian.Long@ CreditorLawCenter.com

Generated by PDFKit.NET Evaluation

Return To: LOAN # 6774054867
FLG-700-01-01
JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD.
BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL. 32256

Prepared By: SONYA WASHINGTON
BANK OF AMERICA, N.A.
900 W. TRADE STREET
GATEWAY VILLAGE, 3RD FLOOR
CHARLOTTE, NC 28255-0001

McCann & Hubbard
1804 Williamson Ct., Stn. 201
Brentwood, TN 37027
615-371-3319

DISTRICT COUNTY
Recvd: 01/09/08 13:17    17 PG
Feed :63.50 Taxes :448.27

20080109-0002774

The Maximum Principal Indebtedness for Tennessee recording tax purpose is $    381,800.00 .

——————————— [Space Above This Line For Recording Data] ———————————

## DEED OF TRUST

LOAN # 6774054867

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined
in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this
document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  DECEMBER 20, 2007   ,
together with all Riders to this document.
(B) "Borrower" is WILLIAM E. KANTZ AND SANDRA LEE,  both unmarried

Borrower is the trustor under this Security Instrument.
(C) "Lender" is BANK OF AMERICA, N.A.

Lender is a  NATIONAL BANKING ASSOCIATION
organized and existing under the laws of  THE UNITED STATES OF AMERICA

TENNESSEE-Single Family- Fannie Mae/Freddie Mae UNIFORM INSTRUMENT          Form 3043 1/01

—BT70 (0405)
Page 1 of 16          Initials
VMP Mortgage Solutions (800)521-7291

CVTN 12/14/07 1:33 PM 6374054867



EXHIBIT

A

Account No.: 672342316

Generated by PDFKIt.NET Evaluation

Lender's address is 800 W. TRADE STREET, GATEWAY VILLAGE, 3RD FLOOR,
CHARLOTTE, NC 28255-0001
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is PRLAP, INC.

a resident of NASHVILLE , Tennessee.
(E) "Note" means the promissory note signed by Borrower and dated DECEMBER 20, 2007 .
The Note states that Borrower owes Lender THREE HUNDRED NINETY ONE THOUSAND EIGHT
HUNDRED AND 00/100                                                        Dollars
(U.S. $     391,800.00   ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than JANUARY 01, 2038 . The
maximum principal indebtedness for Tennessee recording tax purposes is $     391,800.00 .
(F) "Property" means the property that is described below under the heading "Transfer of Rights
in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider           ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                ☐ Biweekly Payment Rider     ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended

Page 3 of 10                                        Form 3043 1/01

Case 3:15-cv-00932   Document 9-1   Filed 09/24/15   Page 2 of 21   PageID #: 138

Case 3:17-cv-00500   Document 1-1   Filed 03/09/17   Page 19 of 71   PageID #: 23

Generated by PDFKit.NET Evaluation

from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of DAVIDSON :

(Type of Recording Jurisdiction)    (Name of Recording Jurisdiction)
"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."

### Derivation Clause
The instrument constituting the source of the Borrower's interest in the foregoing described property was a recorded

in the Register's Office of DAVIDSON    County, Tennessee,
Parcel ID Number: no    which currently has the address of
1244 MARY HELEN DRIVE    (Street)
NASHVILLE    (City), Tennessee 37220    (Zip Code)
("Property Address"):

TO HAVE AND TO HOLD, the aforedescribed property, together with all the hereditaments and appurtenances thereunto belonging to, or in anywise appertaining, unto the Trustee, its successors in trust and assigns, in fee simple forever.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except

-63TN) (0440)    Page 3 of 14    Form 3043 1/01

· Generated by PDFKit.NET Evaluation

for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

-3370 ᴼᴴᴵᴼ

Page 4 of 10

CVS# 12/14/01 1:37 PM 8374094231

Form 3049 1/01

Generated by PDFKit.NET Evaluation

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and

·Generated by PDFKit.NET Evaluation

Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only as long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold

Generated by PDFKit.NET Evaluation

the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agree in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as

Generated by PDFKit.NET Evaluation

the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a

Page 8 of 10  Initials _____  Form 3043 1/01

-8770 04055

DVSN 12/14/07 1:27 PM 8172424887

Generated by PDFKit.NET Evaluation

non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

Generated by PDFKit.NET Evaluation

Generated by PDFKIt.NET Evaluation

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless

Generated by PDFKit.NET Evaluation

Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

-6(TN) (0400) 
CVIN 12/14/07 1:27 PM 6274264387

Page 11 of 18

Form 3049 1/01

Generated by PDFKit.NET Evaluation

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure

Generated by PDFKit.NET Evaluation

given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 30.

21. Hazardous Substances. As used in this Section 31: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action

-3770 (0041)    Page 13 of 16    Form 3048 1/01

CVTN (02/36/07 1237 (02 6774094623

Click here to unlock PDFKit.NET

Generated by PDFKILNET Evaluation

to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by Applicable Law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in Section 15. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Property after sale.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Waivers. Borrower waives all right of homestead, equity of redemption, statutory right of redemption and relinquishes all other rights and exemptions of every kind, including, but not limited to, a statutory right to an elective share in the Property.

-SCTRO 04019<br>CYCH 12/14/03 1/31 PM 9774054203

Initial _____

Form 3043 1/01

Made known to anybody DVDEV'S NET

Generated by PDFKILNET Evaluation

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it. IN WITNESS WHEREOF, Borrower has executed this Security Instrument.

Witnesses:

_____        _____ (Seal)
                                 WILLIAM E. KANTZ         -Borrower

_____        _____ (Seal)
                                 SHERRA LEE               -Borrower

_____ (Seal)     _____ (Seal)
            -Borrower                                     -Borrower

_____ (Seal)     _____ (Seal)
            -Borrower                                     -Borrower

_____ (Seal)     _____ (Seal)
            -Borrower                                     -Borrower

-6(VA) (0008)          Page 18 of 18          Form 3048 1/01
                       CVTX 12/14/23 1:37 PM 8714334327

Generated by PDFKit.NET Evaluation

**STATE OF TENNESSEE,** County of _Williamson_

On this _20_ day of _December_ _2007_ before me personally appeared

_William E. Kavtz and Sandra Lee_

to me known to be the person(s) described in and who executed the foregoing instrument, and who acknowledged the execution of the same to be his/her/their free act and deed. Witness my hand and official seal.

My Commission Expires

Notary Public

MY COMMISSION EXPIRES:
JULY 15, 2009

Page 16 of 19          Form 3043 1/01

[ITEM 12/14/07 1:17 PM 871451027]

Generated by PDFKit.NET Evaluation

## EXHIBIT A

Land in Davidson County, Tennessee, being Lot No. 11 on the plan of Brigid Ann Heights, Section 3, of record in Plat book 4650, page 101, Register's Office for Davidson County, Tennessee, to which reference is hereby made for a more complete description thereof.

Being the same property conveyed to William E. Kantz, Jr., by Warranty deed, from Troy Heithcock and wife, Margaret Heithcock, of record in Instrument No. 20050110-0003205, Dated January 3, 2005, Register's Office for Davidson County, Tennessee. And being the same property conveyed to William E. Kantz, Jr., unmarried and Sandra Lee, unmarried by Strawman Quitclaim Deed from Russell J. McCann, of record in Instrument No. 20080109.0002723, Register's Office for Davidson County, Tennessee.

William E. Kantz, Jr. and William E. Kantz are one and the same person.

M&H File #: 07768-JM

Davidson County    DEEDTRS
Recvd: 03/06/14 11:21    4 pgs
Fees:22.00 Taxes:0.00
20140306-0018906

Prepared by and Return to:
Rubin Lublin TN, PLLC
119 S. Main Street, Suite 500
Memphis, TN 38103
BAC-13-02942

| ADDRESSES NEW OWNER(S) AS FOLLOWS: | SEND TAX BILLS TO: | MAP PARCEL NUMBER: |
|---|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION | FEDERAL HOME LOAN MORTGAGE CORPORATION | 145-10-77.00 |
| 2300 Windy Ridge Parkway SE Suite 200 North Tower Atlanta, Georgia 30339 | 2300 Windy Ridge Parkway SE Suite 200 North Tower Atlanta, Georgia 30339 | |

## SUBSTITUTE TRUSTEE'S DEED

WHEREAS, by that certain Deed of Trust dated December 20, 2007 and recorded January 9, 2008, at Instrument Number 20080109-0002774 (SEE SUBORDINATION AGREEMENT AT INSTRUMENT #20080109-0002775), Register's Office for Davidson County, Tennessee (the "Deed of Trust"), SANDRA LEE and WILLIAM E. KANTZ AKA WILLIAM E. KANTZ, JR. ("Borrower"), conveyed to PRLAP, INC, Trustee, certain real property as described below (the "Property") to secure the payment of a certain indebtedness described in the Deed of Trust including, without limitation, that evidenced by a certain promissory note executed on December 20, 2007, (the "Note"), which obligation is presently held and owned by BANK OF AMERICA, N.A.; and

WHEREAS, demand was made for the payment of the Note secured by the Deed of Trust referenced above, the payment of which was in default, and the obligation secured by the Deed of Trust referenced above was declared due and payable as provided in the Note and Deed of Trust, but the obligation was not paid; and

WHEREAS, Lender, the owner and holder of the Note evidenced by the Deed of Trust, demanded that the Property be advertised and sold in accordance with the terms of the Deed of Trust; and

WHEREAS, the undersigned, Rubin Lublin TN, PLLC, was duly appointed as Substitute Trustee in the place and stead of PRLAP, INC , said appointment being set forth in Instrument Number 20130604-0056186 in said Register's Office; and

WHEREAS, a Notice of the Right to Foreclose, if required pursuant to T.C.A. § 35-5-117, was given at least sixty (60) days prior to the first publication in accordance with Tennessee law; and

WHEREAS, the Substitute Trustee caused a diligent search of the Defense Manpower Data Center (DMDC) website for each known Borrower in compliance with the Service Members Civil Relief Act, and as such the foreclosure of this property is not subject to the provisions of 50 U.S.C. § 501, et seq.; and

WHEREAS, the Substitute Trustee caused a diligent search of the PACER website for each known Borrower and determined that Substitute Trustee was not subject to an automatic stay in bankruptcy both at the time foreclosure proceedings commenced and the time the Property was sold; and

WHEREAS, the Substitute Trustee caused notice to be published as provided for under T.C.A. §35-5-104 and as provided in the Deed of Trust and Note in The Tennessee Tribune that the Property would be sold on February 20, 2014, at 11:00 AM at the door of the Davidson County Courthouse, Nashville Tennessee, such advertisement appearing in said newspaper on January 23, 2014, January 30, 2014, February 6, 2014, a c[...] [EXHIBIT] [...]nt to the parties required under T.C.A. § 35-5-101(e) prior to the first pub[...] [...]e, and following such notice the default was not cured; and

EXHIBIT

WHEREAS, the Substitute Trustee at the time, place and date specified in said notices appeared and offered the property for sale, and after opening the floor for competitive bids, sold said Property to **BANK OF AMERICA, N.A.** at the price of **Three Hundred Ninety-Eight Thousand One Hundred Twenty-Six and 15/100 ($398,126.15)** this being the highest, last and best bid; and

WHEREAS, **BANK OF AMERICA, N.A.**, as successful purchaser at said sale, transferred and assigned its bid to FEDERAL HOME LOAN MORTGAGE CORPORATION.

NOW, THEREFORE, Rubin Lublin TN, PLLC, Substitute Trustee as aforesaid, in consideration of the premises and the sum of Three Hundred Ninety-Eight Thousand One Hundred Twenty-Six and 15/100 ($398,126.15) to me in hand paid, the receipt of which is hereby acknowledged, by these presents do transfer and convey unto **FEDERAL HOME LOAN MORTGAGE CORPORATION** ("Grantee"), its successors and assigns, all of its right, title and interest in and to the Property, including without limitation, the following described real estate and improvements located thereon, but no further or otherwise, located in Davidson County, Tennessee, and more particularly described as follows, to wit:

LAND IN DAVIDSON COUNTY, TENNESSEE, BEING LOT NO. 11 ON THE PLAN OF BRIGID ANN HEIGHTS, SECTION 3, OF RECORD IN PLAT BOOK 4660, PAGE 101, REGISTER'S OFFICE FOR DAVIDSON COUNTY, TENNESSEE, TO WHICH REFERENCE IS HEREBY MADE FOR A MORE COMPLETE DESCRIPTION THEREOF.

BEING THE SAME PROPERTY CONVEYED TO WILLIAM E. KANTZ, JR. BY WARRANTY DEED, FROM TROY HEITHCOCK AND WIFE, MARGARET HEITHCOCK, OF RECORD IN INSTRUMENT NO. 20050110-0003205, DATED JANUARY 3, 2005, REGISTER'S OFFICE FOR DAVIDSON COUNTY, TENNESSEE.

BEING THE SAME PROPERTY CONVEYED TO WILLIAM E. KANTZ, JR., UNMARRIED AND SANDRA LEE, UNMARRIED BY STRAWMAN QUITCLAIM DEED FROM RUSSELL J. MCCANN, OF RECORD IN INSTRUMENT NO. 200801090002773, REGISTER'S OFFICE FOR DAVIDSON COUNTY, TENNESSEE.

WILLIAM E. KANTZ, JR. AND WILLIAM E. KANTZ ARE ONE AND THE SAME PERSON.

M&H FILE #: 07708-JM

This property is now or was formerly known as 1244 MARY HELEN DR, NASHVILLE, TN 37220.

This entity is tax exempt.

To have and to hold the aforesaid real estate, together with all improvements thereon, free from any equity of redemption, statutory right of redemption, spouse's elective share, homestead, dower, courtesy and all other exemptions, as provided in, but only to the extent provided in, said Deed of Trust.

Said sale will be subject to (1) any and all unpaid ad valorem taxes (plus penalty and interest, if any) that may be a lien upon the Property; (2) any and all liens, defects, encumbrances, adverse claims, and other matters which take priority over the Deed of Trust upon which this foreclosure sale is had; (3) any statutory rights of redemption not otherwise waived in the Deed of Trust, including rights of redemption of any governmental agency, state or federal, which might not have been waived by such governmental agency; (4) applicable covenants, restrictions, building setbacks, easements, and to all conditions as shown with respect to the aforementioned Property in the Register's Office of Davidson County, Tennessee; (5) any governmental zoning and subdivision ordinances or regulations in effect thereon; (6) the accuracy of the Index Book of the said Register's Office; and (7) any other matters which an accurate survey of the Property might disclose.

The Property is conveyed AS IS WHERE IS, without representations or warranties of any kind whatsoever, whether express or implied. Without limiting the foregoing, THE PROPERTY IS SOLD WITHOUT ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE OR PURPOSE.

WITNESS the signature of the Substitute Trustee this ___ day of FEB 2 8 2014 , 20___.

Rubin Lublin TN, PLLC

Printed Name:_____
Title: Member          Victor Kang

STATE OF GEORGIA )
COUNTY OF GWINNETT )

Before me, J. Z. Marshall-Clarke _____, of the state and county aforesaid, personally appeared ,_____ Victor Kang _____, of Rubin Lublin TN, PLLC, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself/herself to be a Member of Rubin Lublin TN, PLLC, a Limited Liability Company, and that he/she as such officer, being authorized to do so, executed the foregoing instrument for the purpose therein contained by signing the name of the Limited Liability Company by himself/herself as such officer.

WITNESS my hand and seal at office in _____ NORCROSS, GEORGIA _____, this ___ day of FEB 2 8 2014 , 20___.

My commission expires:

J. Z. MARSHALL CLARKE
NOTARY Notary Public
EXPIRES
GEORGIA
JAN. 20, 2018
PUBLIC
JACKSON COUNTY

STATE OF GEORGIA )
COUNTY OF GWINNETT )

The actual consideration or value, whichever is greater, for this transfer is $398,126.15.

Printed Name:_____  Victor Kang
Title: Member, Rubin Lublin TN, PLLC

Sworn to and subscribed
before me this ___ day of FEB 2 8 2014 , 20___.

Notary Public

My commission expires:

J. Z. MARSHALL CLARKE
NOTARY
EXPIRES
GEORGIA
JAN. 20, 2018
PUBLIC
JACKSON COUNTY

## True Copy Certification

I, _____**Victor Kang**_____, do hereby make oath that I am a licensed attorney and/or the custodian of the electronic version of the attached document tendered for registration herewith and that this is a true and correct copy of the original document executed and authenticated according to law.

_____
Signature

State of _Georgia_

County of _Gwinnett_

Personally appeared before me, _J.Z. Marshall-Clarke_ a notary public for this county and state, _____**Victor Kang**_____ who acknowledges that this certification of an electronic document is true and correct and whose signature I have witnessed.



_____
Notary's Signature

My Commission Expires: _____ Notary'
Seal (if on paper)

Chaness
<bchaness@ru
binlublin.com
> wrote:

Scott,

If you have this
evidence,
please provide
it. Otherwise,
there is nothing
further that we
will be doing
with regard to
this sale.

*Personalized
Service,
Professional
Results*

<image5ac249
.JPG>

**Bret
Chaness | Liti
gation
Associate**

| Rubin Lublin, LLC / Rubin Lublin TN, PLLC | Main: 770-246-3300 |
| 3740 Davinci Court, Suite 250 | Direct: 678-281-2730 |
| Peachtree Corners, Georgia 30092 | Fax: 404-921-9016 |
| www.rubinlublin.com lchaness@rubinlublin.com | |

*Serving
Georgia,
Mississippi,*



**EXHIBIT**

C

**Scott D. Johannessen**
Attorney | CPA
Law Offices of Scott D. Johannessen

877.863.5400 | phone
877.863.5401 | fax
916 419 6600 | mobile
scott@sdjnet.com | email
www.sdjnet.com | web

Nashville | Sacramento
Licensed in Tennessee and California

Confidentiality Note: This email may contain
confidential or private information. If you
are not the intended recipient or received
this email in error please delete and notify the
sender.

On Feb 27, 2014, at 11:49 AM, Bret
Chaness <bchaness@rubinlublin.com>
wrote:

Scott.

Once I look into the matter further I will reply to
your email. And I am telling you that you can't
speak with my client because they are
represented by an attorney in this matter (my
firm), not because you are an attorney.

*Personalized Service, Professional Results*

<imagea36bd2.JPG>

**Bret Chaness | Litigation Associate**

| Rubin Lublin, LLC/Rubin Lublin TN, PLLC | Main: 770-246-3300 |
|---|---|
| 3740 Davinci Court, Suite 150 | Direct: 678-281-2730 |
| Peachtree Corners, Georgia 30092 | Fax: 404-921-9016 |
| www.rubinlublin.com | bchaness@rubinlublin.com |

*Serving Georgia, Mississippi,
Tennessee & Alabama*

**EXHIBIT**

D

prerogative, but if you believe what you say to be
true then you should have no problem setting the
record straight. Better now than in litigation where
it would be addressed anyway, wouldn't you agree?

Please advise BANA of your firm's error. Since the
matter is closed insofar as your firm is concerned,
BANA will be contacted independently.

Thanks.

**Scott D. Johannessen**
Attorney | CPA

877.863.5400 | phone
877.863.5401 | fax
916.419.6609 | mobile
scott@sdinet.com | email
www.sdinet.com | web

Nashville | Sacramento
Licensed in Tennessee and California

Confidentiality Note: This email may contain confidential or private information. If you
are not the intended recipient or received this email in error please delete and notify the
sender.

On Mar 7, 2014, at 12:59 PM, Bret Chaness
<bchaness@rubinlublin.com> wrote:

> Scott,
>
> My office has conducted further
> investigation into the sale and have
> discovered no irregularities whatsoever.
> The individual who cried the sale has
> assured us that the sale was cried. At this
> point in time, I am not sure what your
> issues are with the sale, as every single
> email you send raises some other,
> unsubstantiated issue. If you have actual
> evidence of any irregularities, please
> provide it. Thus far, you have mentioned
> photos, videos, and letters from the
> borrower, but have produced nothing to
> show that these actually exist.
>
> As to your latest issue raised, I will not be
> discussing with you anything that was
> talked about with my client. As you well
> know, that is privileged information.
> Additionally, any allegation regarding a
> "written notice" sent by the borrower to
> Rubin Lublin and BANA is irrelevant. As I

**EXHIBIT**

E

Law Offices of Scott D. Johannessen

877.863.5400 | phone
877.863.5401 | fax
916.419.6600 | mobile
scott@sdjnet.com | email
www.sdjnet.com | web

Nashville | Sacramento
Licensed in Tennessee and California

Confidentiality Note: This email may contain
confidential or private information. If you
are not the intended recipient or received
this email in error please delete and notify the
sender.

On Mar 7, 2014, at 2:52 PM, Scott Johannessen <scott@sdjnet.com> wrote:

Bret,

Thanks for the case citation, but it does not address my concern.
There will be a time to argue the law and the facts, but now is not that
time.

Also, I never said I would contact your client about this dispute. Read
my email again. I again emphasize that I will not. Please have the
courtesy of not fomenting a dispute where none exists.

I'm not sure what your email accomplishes, other than further evasion
and denial. Your silence and veiled threats speak volumes. Thanks
for the confirmation.

Scott D. Johannessen
Attorney | CPA
Law Offices of Scott D. Johannessen

877.863.5400 | phone
877.863.5401 | fax
916.419.6600 | mobile
scott@sdjnet.com | email
www.sdjnet.com | web

Nashville | Sacramento
Licensed in Tennessee and California

Confidentiality Note: This email may contain
confidential or private information. If you
are not the intended recipient or received
this email in error please delete and notify the
sender.

On Mar 7, 2014, at 2:37 PM, Bret Chaness
<bchaness@rubinlublin.com> wrote:

Scott,

I direct you to a recently published decision, *Coleman v.
Indymac Venture, LLC,* ___ F. Supp. 2d ____, No. 2:12-



**EXHIBIT**

F

Case 3:17-cv-00500   Document 1-1   Filed 03/09/17   Page 42 of 71 PageID #: 46

cv-2125-JTF-dkv, 2013 WL 4499133, at *7 (W.D. Tenn. Aug. 20, 2013) (citing *Young v. Bank One, N.A.*, No. M2003-01359-COA-R3-CV, 2004 WL 2098284, at *1 (Tenn. Ct. App. Sept. 20, 2004), where it was noted that "[t]he burden of proof imposed upon a party seeking rescission of a foreclosure sale is substantial, and courts do not set aside foreclosure sales lightly." If you have case law to the contrary, please provide it. And again, if you have evidence that shows any irregularities, please provide it.

You cannot contact my client independently and any attempt to do so will result in my firm filing a complaint against you with the Board of Professional Responsibility.

*Personalized Service, Professional Results*
<image9539c2.JPG>

Bret Chaness | Litigation Associate

| | |
|---|---|
| Rubin Lublin, LLC/Rubin Lublin TN, PLLC | Main: 770-246-3300 |
| 3740 Davinci Court, Suite 150 | Direct: 678-281-2730 |
| Peachtree Corners, Georgia 30092 | Fax: 404-921-9016 |
| www.rubinlublin.com | bchaness@rubinlublin.com |

*Serving Georgia, Mississippi, Tennessee & Alabama*

**From:** Scott Johannessen [mailto:scott@sdjnet.com]
**Sent:** Friday, March 07, 2014 3:10 PM
**To:** Bret Chaness
**Cc:** Peter Lublin
**Subject:** Re: URGENT!! IMMEDIATE ATTENTION REQUESTED!!

Bret.

Under Tennessee and Sixth Circuit law it is not my client's burden to prove your firm, as substitute trustee, conducted a proper sale. It is your client's burden.

If you are comfortable with your facts then perhaps you could affirm by affidavit just one. That is, affirm your claim and support your prior representations and assurances that the sale was indeed cried as noticed. It is certainly your

Case 3:17-cv-00500   Document 1-1   Filed 03/09/17   Page 43 of 71 PageID #: 47



**Bank of America**

Home Loans

8501 Fallbrook Avenue
Mail Code: CA9-901-02-45
West Hills, CA 91304

July 18, 2014

Roberts & Layman
1700 Hayes Street, Suite 303
Nashville, TN 37203
Attention: James D.R. Roberts, Jr.

Re:    Customers: William E. Kantz and Sandra Lee
       Property Address: 1244 Mary Helen Drive, Nashville, TN 37220
       Bank of America loan number ending in: 9315

Dear Mr. Roberts:

We are in receipt of your correspondence dated June 27, 2014, and July 11, 2014, which were received on June 27, 2014, and July 17, 2014, respectively, by Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP ("Bank of America"), regarding the referenced loan.

Please note, our records reflect that the subject property was sold at the foreclosure sale held on February 20, 2014.

Enclosed is a *Loan History Statement* that provides a detailed outline of transactions for this loan. Please note that this history provides pertinent information on payments received, tax and insurance payments disbursed, funds in the suspense/unapplied balance, and late charges assessed and paid.

Please be advised that the Investor information requested for this loan was sent to the customer under separate cover, a copy of which is enclosed.

Enclosed is a copy of the following loan document as requested: *Note.*

A Post-Sale *Payoff Demand Statement* has been requested and will be sent to you under separate cover within 7 to 10 business days, if a statement can be provided.

The additional concerns addressed in the correspondence require further detailed analysis. We will respond to the request after we have completed our investigation.

If you have any questions pertaining to this matter in the interim, please contact Tim McInturff at 1.805.577.3253. For all other questions or concerns relating to the servicing of the loan, please contact the assigned Foreclosure Counsel with Bank of America, Rubin Lublin, LLC, at 1.770.246.3300.

Sincerely,

*Greg Sargent*

Greg Sargent
Litigation Specialist II

Enclosures



EXHIBIT

Revised 7/11/14
ACK 01

# NOTICE OF SUBSTITUTE TRUSTEE'S SALE

WHEREAS, default has occurred in the performance of the covenants, terms and conditions of a Deed of Trust dated December 20, 2007, executed by WILLIAM E. KANTZ AKA WILLIAM E. KANTZ, JR., AND SANDRA LEE, conveying certain real property therein described to PRLAP, INC, as Trustee, as same appears of record in the Register's Office of Davidson County, Tennessee recorded January 9, 2008, at Instrument Number 20080109-0002774 (SEE SUBORDINATION AGREEMENT AT INSTRUMENT #20080109-0002775); and

WHEREAS, the beneficial interest of said Deed of Trust was last transferred and assigned to BANK OF AMERICA, N.A. who is now the holder of said debt; and

WHEREAS, the undersigned, Rubin Lublin TN, PLLC, having been appointed as Substitute Trustee by Instrument Number 20130604-0056186, recorded in the Register's Office of Davidson County, Tennessee; and

WHEREAS, a Substitute Trustee's Deed foreclosing the said Deed of Trust was recorded in the Register's Office of Davidson County, Tennessee, at Instrument Number 20140306-0018906; and

WHEREAS, there is pending litigation concerning the sale memorialized in the aforementioned Substitute Trustee's Deed in the United States District Court for the Middle District of Tennessee, *Kantz v. Rubin Lublin TN, PLLC et al.*, Case No. 3:14-cv-01113 (the "Litigation"); and

WHEREAS, there are allegations in the Litigation that the sale memorialized in the aforementioned Substitute Trustee's Deed is void; and

WHEREAS, the sale is being conducted pursuant to the authority granted by the June 27, 2014, Minute Entry of the United States District Court for the Middle District of Tennessee, Case No. 3:14-cv-01113.

NOW, THEREFORE, notice is hereby given that the entire indebtedness has been declared due and payable, and that the undersigned, Rubin Lublin TN, PLLC, as Substitute Trustee or its duly appointed agent, by virtue of the power, duty and authority vested and imposed upon said Substitute Trustee will, on **August 26, 2014**, at 11:00 AM at the Front Entrance of the Historic Courthouse located at 1 Public Square , located in Nashville, Tennessee, proceed to sell at public outcry to the highest and best bidder for cash or certified funds ONLY, the following described property situated in Davidson County, Tennessee, to wit:

LAND IN DAVIDSON COUNTY, TENNESSEE, BEING LOT NO. 11 ON THE PLAN OF BRIGID ANN HEIGHTS, SECTION 3, OF RECORD IN PLAT BOOK 4660, PAGE 101, REGISTER'S OFFICE FOR DAVIDSON COUNTY, TENNESSEE, TO WHICH REFERENCE IS HEREBY MADE FOR A MORE COMPLETE DESCRIPTION THEREOF.

BEING THE SAME PROPERTY CONVEYED TO WILLIAM E. KANTZ, JR. BY WARRANTY DEED, FROM TROY HEITHCOCK AND WIFE, MARGARET HEITHCOCK, OF RECORD IN INSTRUMENT NO. 20050110-0003205, DATED JANUARY 3, 2005, REGISTER'S OFFICE FOR DAVIDSON COUNTY, TENNESSEE. AND BEING THE SAME PROPERTY CONVEYED TO WILLIAM E. KANTZ, JR., UNMARRIED AND SANDRA LEE, UNMARRIED BY STRAWMAN QUITCLAIM DEED FROM RUSSELL J. MCCANN, OF RECORD IN INSTRUMENT NO. 200801090002773, REGISTER'S OFFICE FOR DAVIDSON COUNTY, TENNESSEE.

Parcel ID: 145-10-77.00

PROPERTY ADDRESS: The street address of the property is believed to be **1244 MARY HELEN DR, NASHVILLE, TN 37220**. In [...] ncy between this street address and the legal description of the prope[...] shall control. CURRENT OWNER(S): WILLIAM E. KAN[...] KANTZ, JR. OTHER INTERESTED PARTIES:

EXHIBIT

H

First Tennessee Bank National Association; FirstBank; Sandra Lee; Amy Holloway

The sale of the above-described property shall be subject to all matters shown on any recorded plat; any unpaid taxes; any restrictive covenants, easements or set-back lines that may be applicable; any prior liens or encumbrances as well as any priority created by a fixture filing; and to any matter that an accurate survey of the premises might disclose. This property is being sold with the express reservation that it is subject to confirmation by the lender or Substitute Trustee. This sale may be rescinded at any time. The right is reserved to adjourn the day of the sale to another day, time, and place certain without further publication, upon announcement at the time and place for the sale set forth above. All right and equity of redemption, statutory or otherwise, homestead, and dower are expressly waived in said Deed of Trust, and the title is believed to be good, but the undersigned will sell and convey only as Substitute Trustee. The Property is sold as is, where is, without representations or warranties of any kind, including fitness for a particular use or purpose.

THIS LAW FIRM IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Rubin Lublin TN, PLLC, Substitute Trustee
119 S. Main Street, Suite 500
Memphis, TN 38103
www.rubinlublin.com/property-listings.php
Tel: (877) 813-0992
Fax: (404) 601-5846



BLANK ROME LLP
COUNSELORS AT LAW

Phone:    215-569-3494
Fax:      215-832-5494
Email:    MBarry@blankrome.com

July 30, 2014

Roberts & Layman
1700 Hayes Street, Suite 303
Nashville, TN 37203
Attention: Jim Roberts, Esq.

Re:    Borrower: William E. Kantz & Sandra Lee (collectively, the "Borrower")
       Property Address: 1244 Mary Helen Drive, Nashville, TN 37220
       Loan Number Ending In: 9315 (the "Loan")

Dear Mr. Roberts:

This firm represents Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP ("Bank of America"), for the sole purpose of responding to certain correspondence from the Borrower dated June 27, 2014 and July 11, 2014 (collectively, the "Letter").

Bank of America has reviewed the Letter and is writing in response to the inquiries and/or allegations contained in the Letter that contain a Notice of Error under 12 C.F.R. §1024.35, an Information Request under 12 C.F.R. §1024.36, or which otherwise require a response under state or federal law. Subject to the exceptions and limitations articulated in 12 C.F.R. §1024.35 and 12 C.F.R. §1024.36, Bank of America has reviewed the Loan file, and its response to the Borrower's allegations and information requests are contained below and in the documents enclosed herewith.

Per your request, enclosed are copies of the following Loan documents: Note; Deed of Trust; Appraisal Report; and Substitute Trustee's Deed. Please refer to the enclosed Loan documents for additional information requested in the Letter.

Also enclosed is a Payment History, which lists the transactions relating to the Loan during Bank of America's servicing. This history provides pertinent information on payments received, tax and insurance payments disbursed, funds in the suspense/unapplied funds balance, and late charges assessed and paid. There are no codes used in the Payment History that require specific definitions.

The fees that have been charged to the Loan that are not reflected in the Payment History are as follows: expedited payoff service fees, $120.00; attorney/trustee fees, $270.00; property inspection fees, $60.00; title fees, $75.00; and recording fees, $12.00.



EXHIBIT

I

One Logan Square                                    PA 19105-6998

900200.00000/22324866v.1

Boca Raton  •  Cincinnati  •  Houston  •  Los Angeles          Princeton  •  Shanghai  •  Washington  •  Wilmington

Case 3:17-cv-00500   Document 1-1   Filed 03/09/17   Page 47 of 71 PageID #: 51

A force placed hazard insurance policy was secured on April 29, 2013, effective February 12, 2013, for an annual premium of $3,861.56. This policy was renewed on February 14, 2014, effective February 12, 2014, for an annual premium of $4,321.26. This policy was subsequently canceled and a refund in the amount of $4,226.54 was credited to escrow. A force placed hazard insurance policy was secured on February 24, 2014, effective February 20, 2014, for an annual premium of $5,069.11. This policy was subsequently canceled and a refund in the amount of $4,235.83 was credited to escrow. A force placed hazard insurance policy was secured on February 24, 2014, effective February 21, 2014, for an annual premium of $5,138.41. Please see the enclosed Payment History for additional information.

We have requested a payoff demand statement, which will be forwarded to you under separate cover, and which will show the amount necessary to pay off the Loan.

Pursuant to 15 U.S.C. §1641(f)(2), the current owner of the note is the Federal Home Loan Mortgage Corporation, which has an address of 8200 Jones Branch Drive, McLean, VA 22102, and a telephone number of (800) 373-3343. The current servicer of the Loan is Bank of America, which has an address of P.O. Box 5170, Simi Valley, CA 93062, Attn: Correspondence Unit, Mail Stop: CA6-919-01-41, and a telephone number of (800) 669-6607.

It is Bank of America's position that no further response to the Letter is required. The remaining requests and/or allegations contained in the Letter do not require a substantive response under 12 C.F.R. §§1024.35-1024.36 and/or the exceptions articulated therein, seek documentation or information beyond that which is available through a request for verification of debt made under 12 U.S.C. §1692g, or do not otherwise require a response under state or federal law.

Questions or concerns regarding the contents of this letter should be submitted to Bank of America in writing at P.O. Box 942019, Simi Valley, CA 93094-2019. If you have other questions or concerns regarding the Loan, please contact Bank of America's Customer Service Department at (800) 669-6607.

In providing the above response, Bank of America is not limiting or waiving any rights or remedies it may now have or hereafter have, whether arising under the loan documents, at law or in equity, all of which rights and remedies are expressly reserved.

Sincerely,

Michael J. Barry

Enclosures

Case 3:17-cv-00500   Document 1-1   Filed 03/09/17   Page 48 of 71 PageID #: 52

**VIA FEDERAL EXPRESS TRACKING NUMBER: # 7707 5540 8573**

August 4, 2014

Jim Roberts, Esq.
Roberts & Layman
Attorneys at Law
1700 Hayes Street, Suite 303
Nashville, TN 37203

Re:  Borrower (s):        William E. Kantz
     BAC Loan Number:     49315
     Property Address:    1244 Mary Helen Drive, Nashville, TN 37220

Dear Mr. Roberts:

Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP ("Bank of America"),
is in receipt of your correspondence dated July 11, 2014, sent on behalf of your client William E. Kantz (the
"Borrower"), wherein you request information pursuant to the origination and servicing of the above-referenced
mortgage loan transaction.

Although your correspondence fails to state any specific basis for rescission, the loan file was reviewed.
In accordance with Section 131(f)(2) of the Truth In Lending Act, 15 U.S.C. Section 1641(f), the current owner
of the note is:

**Federal Home Loan Mortgage Corporation**
**Attn: Consumer Care**
**8200 Jones Branch Drive**
**McLean, VA 22102**
**Phone: 800-373-3343 Option 2**

In providing this response, Bank of America, N.A. is making no admission of any TILA violations related to this
transaction. Per your request, enclosed is a copy of the loan history for the subject loan. The remainder of your
correspondence has been, or will be, addressed under separate cover.

Please feel free to contact me in writing should you have any questions or need additional information. For
information regarding loan workout assistance, please contact Bank of America Home Retention Division at (800)
669-0102.

Sincerely,

Christina Santana
Mortgage Resolution Specialist II
Bank of America
1757 Tapo Canyon Road
Mail Stop: CA6-913-02-29
Simi Valley, Calif. 93063

Enclosure

EXHIBIT
J

Note: Fair Debt Collection Practices Act Disclaimer (FDCPA):
Bank of America may be considered a debt collector attempting to collect a debt if you are currently in a
bankruptcy proceeding or have previously obtained a discharge of this debt under bankruptcy law, this notice is for informational
purposes only and is not an attempt to collect a debt, a demand for payment or an attempt to impose personal liability for a discharged



BLANK ROME LLP
COUNSELLORS AT LAW

Phone:    215-569-5494
Fax:      215-832-5494
Email:    MBarry@blankrome.com

September 16, 2014

Roberts & Layman
1700 Hayes Street, Suite 303
Nashville, TN 37203
Attention: Jim Roberts, Esq.

Re:    Borrower: William E. Kantz & Sandra Lee (collectively, the "Borrower")
       Property Address: 1244 Mary Helen Drive, Nashville, TN 37220
       Loan Number Ending In: 9315 (the "Loan")

Dear Mr. Roberts:

This firm represents Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP ("Bank of America"), for the sole purpose of responding to your correspondence dated August 11, 2014 and September 2, 2014 (collectively, the "Letter").

Bank of America has reviewed the Letter and is writing in response to the inquiries and/or allegations contained in the Letter that contain a Notice of Error under 12 C.F.R. §1024.35, an Information Request under 12 C.F.R. §1024.36, or which otherwise require a response under state or federal law. Subject to the exceptions and limitations articulated in 12 C.F.R. §1024.35 and 12 C.F.R. § 1024.36, Bank of America has reviewed the Loan file, and its response to the Borrower's allegations and information requests are contained below and in the documents enclosed herewith.

As you are aware, Bank of America previously received correspondence from the Borrower concerning the Loan dated June 27, 2014 and July 11, 2014 (the "Prior Letters"), which Bank of America responded to through correspondence from this office dated July 30, 2014 (the "Prior Response"). The Prior Response was supplemented by additional correspondence from this office dated August 4, 2014 (the "Supplemental Response"). Please be advised, it is Bank of America's position that the Prior Response, together with the Supplemental Response, sufficiently addressed each of the Prior Letters' inquiries to which Bank of America was obligated to respond.

Regarding your request for information concerning whether the application of the amount of the bid at the foreclosure sale conducted on February 20, 2014 to the Loan, as you are no doubt aware, the foreclosure sale is the subject of litigation between the Borrower and Bank of

EXHIBIT
K

One Logan Squar... ...PA 19103 6998

900200 00000/22333024 1
Boca Raton • Cincinnati • Houston • Los Angeles • New York • Philadelphia • Princeton • Shanghai • Washington • Wilmington

America. As a result of the litigation, Bank of America conducted a second foreclosure sale on August 26, 2014. Accordingly, the amount of the bid at the foreclosure sale conducted on February 20, 2014 was not applied to the Loan.

Regarding your request for information concerning the names of all servicers for the Loan in the past year, please disregard the information referencing a new servicer contained in the Supplemental Response, as this information was incorrect. The current servicer of the Loan remains Bank of America, which has an address of P.O. Box 5170, Simi Valley, CA 93062, Attn: Correspondence Unit, Mail Stop: CA6-919-01-41, and a telephone number of (800) 669-6607. Bank of America has serviced the Loan since origination.

Regarding your request for information concerning the Federal Home Loan Mortgage Corporation's interest in the Loan and the subject property, please be advised, as indicated in the Prior Response, the Federal Home Loan Mortgage Corporation was and remains the owner of the note pursuant to 15 U.S.C. §1641(f)(2). The Federal Home Loan Mortgage Corporation has an address of 8200 Jones Branch Drive, McLean, VA 22102, and a telephone number of (800) 373-3343.

As indicated in Bank of America's correspondence to you dated September 4, 2014, the Federal Home Loan Mortgage Corporation is the investor in the Loan, which owns the note and is the party entitled to payments on the Loan. Bank of America is the servicer of the Loan, which is the party that collects payments on the Loan on behalf of the Federal Home Loan Mortgage Corporation. Please see Bank of America's correspondence to you dated September 4, 2014 for additional information.

Please also be advised, this firm does not represent Bank of America in connection with any foreclosure related activity on the Loan. Therefore, to the extent the Letter is requesting information or making allegations regarding the validity of the foreclosure or other foreclosure related issues, Bank of America and/or its foreclosure counsel may respond to these requests or allegations under separate cover.

It is Bank of America's position that no further response to the Letter is required. The remaining requests and/or allegations contained in the Letter do not require a substantive response under 12 C.F.R. §§1024.35-1024.36 and/or the exceptions articulated therein, seek documentation or information beyond that which is available through a request for verification of debt made under 12 U.S.C. § 1692g, or do not otherwise require a response under state or federal law.

Questions or concerns regarding the contents of this letter should be submitted to Bank of America in writing at P.O. Box 942019, Simi Valley, CA 93094-2019. If you have other questions or concerns regarding the Loan, please contact Bank of America's Customer Service Department at (800) 669-6607.

September 16, 2014
Page 3

In providing the above response, Bank of America is not limiting or waiving any rights or remedies it may now have or hereafter have, whether arising under the loan documents, at law or in equity, all of which rights and remedies are expressly reserved.

Sincerely,

Michael J. Barry

Prepared by and Return to:
Rubin Lublin TN, PLLC
119 S. Main Street, Suite 500
Memphis, TN 38103
BAC-13-02942

| ADDRESSES NEW OWNER(S) AS FOLLOWS: | SEND TAX BILLS TO: | MAP PARCEL NUMBER: |
|---|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION | FEDERAL HOME LOAN MORTGAGE CORPORATION | 145-10-77.00 |
| 2300 Windy Ridge Parkway SE Suite 200 North Tower Atlanta, Georgia 30339 | 2300 Windy Ridge Parkway SE Suite 200 North Tower Atlanta, Georgia 30339 | |

## SUBSTITUTE TRUSTEE'S DEED

WHEREAS, by that certain Deed of Trust dated December 20, 2007 and recorded January 9, 2008, at Instrument Number 20080109-0002774 (SEE SUBORDINATION AGREEMENT AT INSTRUMENT #20080109-0002775), Register's Office for Davidson County, Tennessee (the "Deed of Trust"), SANDRA LEE and WILLIAM E. KANTZ AKA WILLIAM E. KANTZ, JR. ("Borrower"), conveyed to PRLAP, INC, Trustee, certain real property as described below (the "Property") to secure the payment of a certain indebtedness described in the Deed of Trust including, without limitation, that evidenced by a certain promissory note executed on December 20, 2007, (the "Note"), which obligation is presently held by BANK OF AMERICA, N.A.; and

WHEREAS, demand was made for the payment of the Note secured by the Deed of Trust referenced above, the payment of which was in default, and the obligation secured by the Deed of Trust referenced above was declared due and payable as provided in the Note and Deed of Trust, but the obligation was not paid; and

WHEREAS, Lender, the holder of the Note evidenced by the Deed of Trust, demanded that the Property be advertised and sold in accordance with the terms of the Deed of Trust; and

WHEREAS, the undersigned, Rubin Lublin TN, PLLC, was duly appointed as Substitute Trustee in the place and stead of PRLAP, INC , said appointment being set forth in Instrument Number 20130604-0056186 in said Register's Office; and

WHEREAS, a Notice of the Right to Foreclose, if required pursuant to T.C.A. § 35-5-117, was given at least sixty (60) days prior to the first publication in accordance with Tennessee law; and

WHEREAS, the Substitute Trustee caused a diligent search of the Defense Manpower Data Center (DMDC) website for each known Borrower in compliance with the Service Members Civil Relief Act, and as such the foreclosure of this property is not subject to the provisions of 50 U.S.C. § 501, et seq.; and

WHEREAS, the Substitute Trustee caused a diligent search of the PACER website for each known Borrower and determined that Substitute Trustee was not subject to an automatic stay in bankruptcy both at the time foreclosure proceedings commenced and the time the Property was sold; and

WHEREAS, the Substitute Trustee caused notice to be published as provided for under T.C.A. §35-5-104 and as provided in the Deed of Trust and Note in The Tennessean that the Property would be sold on August 26, 2014, at 11:00 AM at the front door of the Davidson County Courthouse, Nashville Tennessee, such advertisement [ EXHIBIT ] ewspaper on August 4, 2014, August 11, 2014, August 18, 2014, a copy of such [ L ] he parties required under T.C.A. § 35-5-101(e) prior to the first publication date w owing such notice the default was not cured; and

NOW, THEREFORE, Rubin Lublin TN, PLLC, Substitute Trustee as aforesaid, in consideration of the premises and the sum of Three Hundred Ninety-Eight Thousand One Hundred Twenty-Six and 15/100 ($398,126.15) to me in hand paid, the receipt of which is hereby acknowledged, by these presents do transfer and convey unto **FEDERAL HOME LOAN MORTGAGE CORPORATION** ("Grantee"), its successors and assigns, all of its right, title and interest in and to the Property, including without limitation, the following described real estate and improvements located thereon, but no further or otherwise, located in Davidson County, Tennessee, and more particularly described as follows, to wit:

LAND IN DAVIDSON COUNTY, TENNESSEE, BEING LOT NO. 11 ON THE PLAN OF BRIGID ANN HEIGHTS, SECTION 3, OF RECORD IN PLAT BOOK 4660, PAGE 101, REGISTER'S OFFICE FOR DAVIDSON COUNTY, TENNESSEE, TO WHICH REFERENCE IS HEREBY MADE FOR A MORE COMPLETE DESCRIPTION THEREOF.

BEING THE SAME PROPERTY CONVEYED TO WILLIAM E. KANTZ, JR. BY WARRANTY DEED, FROM TROY HEITHCOCK AND WIFE, MARGARET HEITHCOCK, OF RECORD IN INSTRUMENT NO. 20050110-0003205, DATED JANUARY 3, 2005, REGISTER'S OFFICE FOR DAVIDSON COUNTY, TENNESSEE.

BEING THE SAME PROPERTY CONVEYED TO WILLIAM E. KANTZ, JR., UNMARRIED AND SANDRA LEE, UNMARRIED BY STRAWMAN QUITCLAIM DEED FROM RUSSELL J. MCCANN, OF RECORD IN INSTRUMENT NO. 200801090002773, REGISTER'S OFFICE FOR DAVIDSON COUNTY, TENNESSEE.

This property is now or was formerly known as 1244 MARY HELEN DR, NASHVILLE, TN 37220.

This entity is tax exempt.

To have and to hold the aforesaid real estate, together with all improvements thereon, free from any equity of redemption, statutory right of redemption, spouse's elective share, homestead, dower, courtesy and all other exemptions, as provided in, but only to the extent provided in, said Deed of Trust.

Said sale will be subject to (1) any and all unpaid ad valorem taxes (plus penalty and interest, if any) that may be a lien upon the Property; (2) any and all liens, defects, encumbrances, adverse claims, and other matters which take priority over the Deed of Trust upon which this foreclosure sale is had; (3) any statutory rights of redemption not otherwise waived in the Deed of Trust, including rights of redemption of any governmental agency, state or federal, which might not have been waived by such governmental agency; (4) applicable covenants, restrictions, building setbacks, easements, and to all conditions as shown with respect to the aforementioned Property in the Register's Office of Davidson County, Tennessee; (5) any governmental zoning and subdivision ordinances or regulations in effect thereon; (6) the accuracy of the Index Book of the said Register's Office; and (7) any other matters which an accurate survey of the Property might disclose.

Rubin Lublin TN, PLLC

_____

Victor Kang, as member of Rubin Lublin, LLC, the member
of Rubin Lublin TN, PLLC

STATE OF GEORGIA    )
COUNTY OF GWINNETT )

Before me, _Mary Miranda Rosenblum_____, of the state and county aforesaid,
personally appeared ,Victor Kang, member of Rubin Lublin, LLC, the member of Rubin Lublin TN,
PLLC, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence),
and who, upon oath, acknowledged himself/herself to be a Member of Rubin Lublin, LLC, a Limited
Liability Company, and that he/she as such officer, being authorized to do so, executed the foregoing
instrument for the purpose therein contained by signing the name of the Limited Liability Company by
himself/herself as such officer.

WITNESS my hand and seal at office in _Peachtree Corners_ _Georgia_____.
this _2nd_ day of _September_____, 20_14_.

_Mary Miranda Rosenblum_
Notary Public

My commission expires:

_2/20/2015_____

STATE OF GEORGIA    )
COUNTY OF GWINNETT )

The actual consideration or value, whichever is greater, for this transfer is $398,126.15.

_____

Victor Kang, as member of Rubin Lublin, LLC, the member
of Rubin Lublin TN, PLLC

Sworn to and subscribed
before me this _2nd_ day of _September___, 20_14_.

_Mary Miranda Rosenblum_
Notary Public

My commission expires:

_2/20/2015_____

# True Copy Certification

I, _____ **Victor Kang** _____, do hereby make oath that I am a licensed attorney and/or the custodian of the electronic version of the attached document tendered for registration herewith and that this is a true and correct copy of the original document executed and authenticated according to law.

_____

Signature

State of Georgia

County of Gwinnett

Personally appeared before me, Mary Miranda Rosenblum, a notary public for this county and state, _____ **Victor Kang** _____ who acknowledges that this certification of an electronic document is true and correct and whose signature I have witnessed.

Date: _9/2/2014_

Notary's Signature

My Commission Expires: _2/20/2015_
Notary Seal (if on paper)

Department Home | Contact Us | Search: [ ] Go

Administrative Hearings | Business Services | Charitable Fundraising | Elections | Library & Archives | Publications



# Tennessee Secretary of State
## Tre Hargett

Home | Apostilles/Authentications | Corporations | Summons | Trademarks | UCC | Workers' Comp Exemption | More Services

Business Services Online > Find and Update a Business Record > Business Entity Detail

# Business Entity Detail

| Available Entity Actions | File Annual Report (after 12/01/2014) | Entity details cannot be edited. This detail reflects the current state of the filing in the system. |
| --- | --- | --- |
| | Certificate of Existence | Return to the Business Information Search. |
| | Update Mailing Address | |

| 000601696: Limited Liability Company - Domestic | | Printer Friendly Version |
| --- | --- | --- |

Name: Rubin Lublin TN, PLLC
Old Name: RUBIN LUBLIN SUAREZ SERRANO TN PLLC

Business Type: Professional Limited Liability Company
Status: Active
Formed In: TENNESSEE
Fiscal Year Close: December
Term of Duration: Perpetual
Principal Office: 119 S MAIN ST STE 403
MEMPHIS, TN 38103-3647 USA
Mailing Address: 3740 DAVINCI CT STE 150
PEACHTREE CORNERS, GA 30092-7614 USA
AR Exempt: No
Managed By: Member Managed

Initial Filing Date: 05/04/2009
Delayed Effective Date:
AR Due Date: 04/01/2015
Inactive Date:

Obligated Member Entity: No
Number of Members: 1

[ Assumed Names ] [ History ] [ Registered Agent ]

| Type | Date | Image # | Detail |
| --- | --- | --- | --- |
| 2013 Annual Report Due 04/01/2014 | 03/07/2014 | A0219-1789 | Detail ∧ |
| Principal Address 1 Changed From:3740 DAVINCI CT To:119 S MAIN ST Principal Address 2 Changed From:STE 150 To:STE 403 Principal City Changed From:PEACHTREE CORNERS To:MEMPHIS Principal State Changed From:GA To:TN Principal Postal Code Changed From:30092-7614 To:38103-3647 Principal County Changed From:No value To:SHELBY COUNTY | | | |
| 2012 Annual Report Due 04/01/2013 | 03/11/2013 | A0160-1307 | Detail ∧ |
| Principal Address 2 Changed From:STE 150 To:STE 150 Principal City Changed From:NORCROSS To:PEACHTREE CORNERS Principal Postal Code Changed From:30092-7613 To:30092-7614 Member Count Changed From:2 To:1 | | | |
| Articles of Amendment | 05/22/2012 | 7057-1887 | Detail ∧ |
| Filing Name Changed From:RUBIN LUBLIN SUAREZ SERRANO TN PLLC To:Rubin Lublin TN, PLLC | | | |
| 2011 Annual Report Due 04/01/2012 | 05/22/2012 | A0121-0913 | |
| Articles of Amendment | 01/30/2012 | 6989-1332 | Detail ∧ |
| Business Type Changed From:No Value To:Professional Limited Liability Company Filing Name Changed From:RUBIN LUBLIN SUAREZ... UBLIN SUAREZ SERRANO TN PLLC Principal Address 1 Changed From:3740 DAVINCI C... Principal Address 2 Changed From:SUITE 400 To:ST... Principal Postal Code Changed From:30092 To:3009... | | | |

EXHIBIT M

| | | | |
|---|---|---|---|
| **2010 Annual Report Due 04/01/2011** | 03/29/2011 | A0065-0437 | Detail ▼ |
| **Mailing Address Update** | 01/03/2011 | | |
| **Articles of Amendment** | 05/14/2010 | 6719-2765 | |
| **2009 Annual Report Due 04/01/2010** | 03/02/2010 | A0008-1237 | Detail ▼ |
| **Articles of Amendment** | 08/26/2009 | 6588-1358 | Detail ▼ |
| **Initial Filing** | 05/04/2009 | 6529-1448 | |

Division of Business Services
312 Rosa L. Parks Avenue, Snodgrass Tower, 6th Floor
Nashville, TN 37243
615-741-2286
Email | Directions | Hours and Holidays

Contact Us | Site Map | Web Policies | Disclaimer | Department of State | Tennessee.gov

© 2013 Tennessee Department of State

Copy

CIRCUIT COURT SUMMONS                                    NASHVILLE, TENNESSEE

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20TH JUDICIAL DISTRICT

2017 FEB 10 PM 3: 54

| [X] | First |
| [ ] | Alias |
| [ ] | Pluries |

Sandra Lee

CIVIL ACTION
DOCKET NO. ___17C363___

_____ Plaintiff

**Method of Service:**

[ ] Davidson County Sheriff

**Vs.**

[ ] Out of County Sheriff

Bank of America, NA

[ ] Secretary of State

c/o Legal Order Processing

[X] Certified Mail

P. O. Box 15046

[ ] Personal Service

Wilmington, Delaware 19850-5047

[ ] Commissioner of Insurance
_____ Defendant

D2W|C,E

**To the above named Defendant:**

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

ISSUED: _2|10|17_

**RICHARD R. ROOKER**
Circuit Court Clerk
Davidson County, Tennessee

By: _____
Deputy Clerk

| ATTORNEY FOR PLAINTIFF | Creditor Law Center / James D. R. Roberts, Jr. |
| or | P. O. Box 331606 |
|  | Address |
| PLAINTIFF'S ADDRESS | Nashville, Tennessee 37203    615-242-2002 |

**TO THE SHERIFF:**

Please execute this summons and make your return hereon as provided by law.

**RICHARD R. ROOKER**
Circuit Court Clerk

Received this summons for service this _____ day of _____, 20____.

**SHERIFF**

 To request an ADA accommodation, please contact Dart Gore at (615) 880-3309.

Copy

## STATE OF TENNESSEE
## DAVIDSON COUNTY
2017 FEB 20 **20TH JUDICIAL DISTRICT**

[X] First
[ ] Alias
[ ] Pluries

Sandra Lee

CIVIL ACTION
DOCKET NO. 17C363

_____
Plaintiff

**Vs.**

Rubin Lublin TN, PLLC

Register Agent Natalie Brown

119 South Main Street, Suite 500

Memphis, Tennessee 38103-3659

_____
Defendant

**Method of Service:**

[ ] Davidson County Sheriff

[ ] Out of County Sheriff

[ ] Secretary of State

[X] Certified Mail

[ ] Personal Service

[ ] Commissioner of Insurance

DIWIC, E

**To the above named Defendant:**

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

ISSUED: 2 | 10 | 17

**RICHARD R. ROOKER**
Circuit Court Clerk
Davidson County, Tennessee

By: _____
Deputy Clerk

| ATTORNEY FOR PLAINTIFF or PLAINTIFF'S ADDRESS | Creditor Law Center / James D. R. Roberts, Jr. |
|---|---|
| | P. O. Box 331606 |
| | Address |
| | Nashville, Tennessee 37203    615-242-2002 |

**TO THE SHERIFF:**

Please execute this summons and make your return hereon as provided by law.

**RICHARD R. ROOKER**
Circuit Court Clerk

Received this summons for service this _____ day of _____, 20____.

_____
**SHERIFF**

To request an ADA accommodation, please contact Dart Gore at (615) 880-3309.



# IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, STATE OF TENNESSEE

SANDRA LEE,  )
    PLAINTIFF,  )
        )
v.  ) Case No. 17C363
RUBIN LUBLIN TN, PLLC, and  )
BANK OF AMERICA, NA,  )
    DEFENDANTS.  )

2017 FEB 17 AM 8: 08

## NOTICE OF DEMAND FOR JURY OF TWELVE (12)

Comes Now the Plaintiff, by and through counsel, and hereby make her demand pursuant

to Tennessee Rule of Civil Procedure 38 for a jury of twelve (12) to hear this case.

Respectfully Submitted:

James D. R. Roberts, Jr, BPR# 017537
Brian I. Long, BPR# 32761
Creditor Law Center
P.O. Box 331606
1700 Hayes Street, Suite 201
Nashville, Tennessee 37203
(615) 242-2002 office
(615) 242-2042 facsimile
Jim.Roberts@CreditorLawCenter.com
www.CreditorLawCenter.com
Attorneys for Sandra Lee

## CERTIFICATE OF SERVICE

I hereby certify a true copy of the forgoing has been sent by United States Mail certified to
Defendant Bank of America, Legal Order Processing, P. O. Box 15046, Wilmington, Delaware
19850-5047 and Defendant Rubin Lublin TN, PLLC, c/o Register Agent Natalie Brown, 119
South Main Street, Suite 500, Memphis, Tennessee 38103-3659 on February 14, 2017.

JAMES D. R. ROBERTS, JR.

CIRCUIT COURT CLERK'S OFFICE
RICHARD R. ROOKER, CLERK

Desc: CONTRACT/DEBT COMP    Rec. Date: 02.10.17    Reference #: 700575

Received from: CREDITOR LAW    By: CK    Operator: bCOLLINS Rep: ROBERTS JR., JA
MES D. R.

LEE, SANDRA            VS RUBIN LUBLIN TN PLLC    17C363
                      BANK OF AMERICA NA

State Lit Tax                                    23.75
County Lit Tax                                   33.75
Clerk's Fee                                     227.00

TOTAL          3              $284.50

                    *B. Call*
            RICHARD R. ROOKER, CLERK        DC

            COURT ASSIGNMENT _____

                                        427970



## U.S. Postal Service
## CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®

MEMPHIS TN 38103

| Certified Mail Fee | $3.35 | 0213 |
| $ | $2.75 | 12 |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) | $ $0.00 | |
| ☐ Return Receipt (electronic) | $ $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | Here |
| ☐ Adult Signature Required | $ $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $2.87 | |
| $ | $8.97 | 02/10/2017 |

7015 3430 0001 0256 6076

Natalie Brown, Reg. Agent
Rubin Lublin TN, PLLC
119 South Main Street, Ste. 500
Memphis, Tennessee 38103-3659

PS Form 3800, April 2015 PSN 7530-02-000-9047  See Reverse for Instructions

## U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®

WILMINGTON DE 19850

| Certified Mail Fee | $3.35 | 0213 |
| $ | $2.75 | 12 |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) | $ $0.00 | |
| ☐ Return Receipt (electronic) | $ $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | Here |
| ☐ Adult Signature Required | $ $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $3.08 | |
| $ | $9.18 | 02/10/2017 |

7015 3430 0001 0256 6083

Bank of America
Legal Order Processing
P. O. Box 15046
Wilmington, DE 19850-5047

PS Form 3800, April 2015 PSN 7530-02-000-9047  See Reverse for Instructions

CHURCH STREET
1718 CHURCH ST
NASHVILLE
TN
37203-9998
4761610213
02/10/2017    (800)275-8777    4:35 PM

| Product Description | Sale Qty | Final Price |
|---|---|---|
| First-Class Mail | 1 | $3.08 |
| Large Envelope (Domestic) (WILMINGTON, DE 19850) (Weight:0 Lb 10.20 Oz) (Expected Delivery Day) (Monday 02/13/2017) | | |
| Certified (@@USPS Certified Mail #) (70153430000102566083) | 1 | $3.35 |
| Return Receipt | 1 | $2.75 |
| First-Class Mail | 1 | $2.87 |
| Large Envelope (Domestic) (MEMPHIS, TN 38103) (Weight:0 Lb 10.00 Oz) (Expected Delivery Day) (Monday 02/13/2017) | | |
| Certified (@@USPS Certified Mail #) (70153430000102566076) | 1 | $3.35 |
| Return Receipt | 1 | $2.75 |
| Total | | $18.15 |
| Personl/Bus Check | | $18.15 |

Text your tracking number to 28777
(2USPS) to get the latest status.
Standard Message and Data rates may
apply. You may also visit USPS.com
USPS Tracking or call 1-800-222-1811.

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

*******************************
BRIGHTEN SOMEONE'S MAILBOX. Greeting
cards available for purchase at select
Post Offices.
*******************************

Order stamps at usps.com/shop or call
1-800-Stamp24. Go to
usps.com/clicknship to print shipping
labels with postage. For other
information call 1-800-ASK-USPS.

*******************************
Get your mail when and where you want
it with a secure Post Office Box. Sign
up for a box online at
usps.com/poboxes.
*******************************

All sales final on stamps and postage
Refunds for guaranteed services only

Copy

I hereby certify and return that on the _____ day of _____, 20_____, I:

[ ] served this summons and complaint/petition on _____

_____ in the following manner:

[ ] failed to serve this summons within 90 days after its issuance because _____

_____

Sheriff/Process Server

2017 FEB 17

**RETURN ON SERVICE OF SUMMONS BY MAIL**

I hereby certify and return, that on the   10th  day of  *Febnury* , 20 *17* sent, postage prepaid by

registered return receipt mail or certified return mail, a certified copy of the summons and a copy of the complaint in Docket No.

*17C363*  to the defendant,  *Rubin Lublin TN, PLLC*  On the  *18th* day of

*Febry* , 20 *17* . I received the return receipt for said registered or certified mail, which had been signed

by *Rachel* , on the  *13th* day of  *Febry* , 20 *17* . Said return

receipt is attached to this original summons and both documents are being sent herewith to the Circuit Court Clerk for filing.

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS

_____ DAY OF _____, 20_____.

_____

_____
PLAINTIFF, PLAINTIFF'S ATTORNEY OR OTHER PERSON
AUTHORIZED BY STATUTE TO SERVE PROCESS

_____ NOTARY PUBLIC or _____ DEPUTY CLERK

MY COMMISSION EXPIRES: _____

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Natalie Brown, Reg. Agent
Rubin Lublin TN, PLLC
119 South Main Street, Ste. 500
Memphis, Tennessee 38103-3659

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 1439 5329 2576 40

2. Article Number (Transfer from service label)

7015 3430 0001 0256 6076

PS Form **3811**, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *Rachel Q*          [ ] Agent
                       [ ] Addressee

B. Received by (Printed Name)     C. Date of Delivery
                                   2-15-19

D. Is delivery address different from item 1? [ ] Yes
   If YES, enter delivery address below:  [ ] No

3. Service Type
[ ] Adult Signature
[ ] Adult Signature Restricted Delivery
[ ] Certified Mail®
[ ] Certified Mail Restricted Delivery
[ ] Collect on Delivery
[ ] Collect on Delivery Restricted Delivery
[ ] Insured Mail
[ ] Insured Mail Restricted Delivery (over $500)

[ ] Priority Mail Express®
[ ] Registered Mail™
[ ] Registered Mail Restricted Delivery
[ ] Return Receipt for Merchandise
[ ] Signature Confirmation™
[ ] Signature Confirmation Restricted Delivery

Domestic Return Receipt

TO THE DEFEND...
Tennessee...
personal property exe...
should be entered aga...
must file a written list,...
the court. The list may...
however, unless it is fi...
execution or garnishm...
exempt by law and do...
(clothing) for yourself a...
apparel, family portrait...
you would have the rig...
to exercise it, you may...

STATE OF TENN...
COUNTY OF DA...

(To be completed o...
copy certification re...

Copy

**CIRCUIT COURT SUMMONS**                                    NASHVILLE, TENNESSEE

**STATE OF TENNESSEE**
**DAVIDSON COUNTY**
2017 FEB 20TH JUDICIAL DISTRICT

☒ First
☐ Alias
☐ Pluries

RICHARD R. ROOKER, CLERK

Sandra Lee

D.C.

CIVIL ACTION
DOCKET NO. _17C363_

_____ Plaintiff

**Method of Service:**

☐ Davidson County Sheriff

**Vs.**

☐ Out of County Sheriff

Rubin Lublin TN, PLLC

☐ Secretary of State

Register Agent Natalie Brown

☒ Certified Mail

119 South Main Street, Suite 500

☐ Personal Service

Memphis, Tennessee 38103-3659

☐ Commissioner of Insurance

_____ Defendant

DIW/C,E

**To the above named Defendant:**

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

ISSUED: _2|10|17_

**RICHARD R. ROOKER**
Circuit Court Clerk
Davidson County, Tennessee

By: _____
Deputy Clerk

| **ATTORNEY FOR PLAINTIFF**<br>or<br>**PLAINTIFF'S ADDRESS** | Creditor Law Center / James D. R. Roberts, Jr. |
| --- | --- |
| | P. O. Box 331606<br>Address |
| | Nashville, Tennessee 37203    615-242-2002 |

TO THE SHERIFF:

Please execute this summons and make your return hereon as provided by law.

**RICHARD R. ROOKER**
Circuit Court Clerk

Received this summons for service this _____ day of _____, 20____.

**SHERIFF**

To request an ADA accommodation, please contact Dart Gore at (615) 880-3309.

Copy

## RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that on the _____ day of _____, 20_____, I:

_____ served this summons and complaint/petition on _____

_____ in the following manner:

_____

_____ failed to serve this summons within 90 days after its issuance because _____

_____

Sheriff/Process Server

### RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return, that on the _10^th_ day of _Febry_ , 20 _17_ I sent, postage prepaid by

registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in Docket No.

_17C313_ to the defendant, _Bank of America, NA._ On the _5^th_ day of

_Febry , 2017_ , #15 , I received the return receipt for said registered or certified mail, which had been signed

by _Bank of America, on the_ _13^th_ day of _Febry_ , 20 _17_ Said return

receipt is attached to this original summons and both documents are being sent herewith to the Circuit Court Clerk for filing.

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS

_____ DAY OF _____, 20____.

_____
PLAINTIFF, PLAINTIFF'S ATTORNEY OR OTHER PERSON
AUTHORIZED BY STATUTE TO SERVE PROCESS

_____ NOTARY PUBLIC or _____ DEPUTY CLERK

MY COMMISSION EXPIRES: _____

---

**SENDER: COMPLETE THIS SECTION**

TO THE DEFEND
Tennessee i
personal property exen
should be entered agai
must file a written list, i
the court. The list may
however, unless it is fil
execution or garnishm
exempt by law and do r
(clothing) for yourself ai
apparel, family portraits
you would have the righ
to exercise it, you may v

STATE OF TENNE
COUNTY OF DAVI

(To be completed onl
copy certification requ

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

BANK OF AMEICIA
LEGAL ORDER PROCESSING
P.O. BOX 15046
WILMINGTON, DE 19850-5047

9590 9402 1439 5329 2576 33

2. Article Number. (Transfer from service label)

7015 3430 0001 0256 6083

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                 ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

FEB 13 2017

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

Copy

F I L E

**STATE OF TENNESSEE**
**DAVIDSON COUNTY**
**20TH JUDICIAL DISTRICT**

2017 FEB 10 PM 3: 54

RICHARD R. ROOKER, CLERK

☒ First
☐ Alias
☐ Pluries

Sandra Lee

**CIVIL ACTION**
**DOCKET NO.** 17C363

Plaintiff

**Method of Service:**

Vs.

☐ Davidson County Sheriff

☐ Out of County Sheriff

Bank of America, NA

☐ Secretary of State

c/o Legal Order Processing

☒ Certified Mail

P. O. Box 15046

☐ Personal Service

Wilmington, Delaware 19850-5047

☐ Commissioner of Insurance

Defendant

D2 W/C,E

**To the above named Defendant:**

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

ISSUED: 2/10/17

**RICHARD R. ROOKER**
Circuit Court Clerk
Davidson County, Tennessee

By: _____
Deputy Clerk

| ATTORNEY FOR PLAINTIFF or PLAINTIFF'S ADDRESS | Creditor Law Center / James D. R. Roberts, Jr. |
|---|---|
| | P. O. Box 331606 |
| | Address |
| | Nashville, Tennessee 37203 · 615-242-2002 |

TO THE SHERIFF:

Please execute this summons and make your return hereon as provided by law.

**RICHARD R. ROOKER**
Circuit Court Clerk

Received this summons for service this _____ day of _____, 20____.

_____
**SHERIFF**

♿ To request an ADA accommodation, please contact Dart Gore at (615) 880-3309.

 Copy

USPS.com® - USPS Tracking®



≡                     ⊠**USPS.COM**

# USPS Tracking®

**Still Have Questions?**
Browse our FAQs ›

  **Get Easy Tracking Updates ›**
Sign up for My USPS.

---

Tracking Number: **70153430000102566083**

                                    ✔  # Delivered

On Time
Updated Delivery Day: **Monday, February 13, 2017** ▾

## Product & Tracking Information

**Postal Product:**          **Features:**
First-Class Mail®            Certified Mail™        Return Receipt

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **February 13, 2017 , 1:36 pm** | Delivered | **WILMINGTON, DE 19886** |

Your item was delivered at 1:36 pm on February 13, 2017 in WILMINGTON, DE 19886.

| | | |
|---|---|---|
| February 13, 2017 , 7:48 am | Available for Pickup | WILMINGTON, DE 19850 |
| February 13, 2017 , 7:36 am | Arrived at Unit | WILMINGTON, DE 19850 |
| February 13, 2017 , 4:57 am | Departed USPS Facility | WILMINGTON, DE 19850 |
| February 12, 2017 , 2:33 pm | Arrived at USPS Destination Facility | WILMINGTON, DE 19850 |
| February 12, 2017 , 6:40 am | In Transit to Destination | |
| February 11, 2017 , 3:33 am | Departed USPS Facility | NASHVILLE, TN 37230 |
| February 10, 2017 , 11:40 pm | Arrived at USPS Origin Facility | NASHVILLE, TN 37230 |
| February 10, 2017 , 4:31 pm | Acceptance | NASHVILLE, TN 37203 |

## Available Actions

**Text Updates**                                            ⊙

**Email Updates**                                           ⊙

---

## Track Another Package

**Tracking (or receipt) number**

[                                            ]        Track It

## Manage Incoming Packages

Track all your packages from a dashboard.
No tracking numbers necessary.

**Sign up for My USPS ›**

---

Copy

 English   ▼    **ℹ** Customer Service    📱 USPS Mobile                    👤 Register / Sign In   ▼

≡                         **📨USPS.COM**

# USPS Tracking®

**Still Have Questions?**
Browse our FAQs ›



**Get Easy Tracking Updates ›**
Sign up for My USPS.

---

Tracking Number: **70153430000102566076**

 ✅    # Delivered

Expected Delivery Day: **Monday, February 13, 2017** ›

## Product & Tracking Information         ## Available Actions

**Postal Product:**       **Features:**
First-Class Mail®       Certified Mail™      Return Receipt             **Text Updates**              ⊖

                                                          **Email Updates**           ⊖

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| February 13, 2017 , 10:41 am | Delivered, Left with Individual | MEMPHIS, TN 38103 |

Your item was delivered to an individual at the address at 10:41 am on February 13, 2017 in MEMPHIS, TN 38103.

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| February 13, 2017 , 2:33 am | Departed USPS Facility | MEMPHIS, TN 38101 |
| February 12, 2017 , 12:18 pm | In Transit to Destination | |
| February 11, 2017 , 12:18 pm | Arrived at USPS Facility | MEMPHIS, TN 38101 |
| February 10, 2017 , 10:33 pm | Departed USPS Facility | NASHVILLE, TN 37230 |
| February 10, 2017 , 10:23 pm | Arrived at USPS Facility | NASHVILLE, TN 37230 |
| February 10, 2017 , 4:32 pm | Acceptance | NASHVILLE, TN 37203 |

## Track Another Package         ## Manage Incoming Packages

**Tracking (or receipt) number**                   Track all your packages from a dashboard.
                                           No tracking numbers necessary. .

                       Track It            **Sign up for My USPS ›** 

**📨USPS.COM**



USPS.com® - USPS Tracking®

| HELPFUL LINKS | ON ABOUT.USPS.COM | OTHER USPS SITES | LEGAL INFORMATION |
|---|---|---|---|
| Contact Us | About USPS Home | Business Customer Gateway | Privacy Policy |
| Site Index | Newsroom | Postal Inspectors | Terms of Use |
| FAQs | USPS Service Updates | Inspector General | FOIA |
| | Forms & Publications | Postal Explorer | No FEAR Act EEO Data |
| | Government Services | National Postal Museum | |
| | Careers | Resources for Developers | |

Copyright © 2017 USPS. All Rights Reserved.

   

**Pleadings Report**

**LEE, SANDRA**
vs
**RUBIN LUBLIN TN PLLC**

| Line # | File Date | Description |
|---|---|---|
| 1 | 02/10/2017 | CONTRACT/DEBT COMPLAINT 231210*1 |
| 2 | 02/10/2017 | EXHIBIT COLLECTIVE AS "A-M"(TO COMPLAINT) |
| 3 | 02/10/2017 | SUMMONS CERT MAIL-D1.D2 W/C,E |
| 4 | 02/17/2017 | JURY DEMAND OF P-12 |
| 5 | 02/17/2017 | AFFIDAVIT OF SERVICE OF PROCESS-D1-SERVED RT-02.13.17 |
| 6 | 02/17/2017 | AFFIDAVIT OF SERVICE OF PROCESS-D2-SERVED RT-02.13.17 |