IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SANDRA LEE,<br><br>    Plaintiff,<br><br>v.<br><br>RUBIN LUBLIN TN, PLLC and BANK OF AMERICA, N.A.,<br><br>    Defendants. | Case No. 3:17-cv-00500<br>Judge Crenshaw<br>Magistrate Judge Frensley |

### RUBIN LUBLIN TN, PLLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

COMES NOW, Rubin Lublin TN, PLLC ("Rubin Lublin"), and files this Memorandum of Law in Support of its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6), respectfully showing this Honorable Court as follows:

### INTRODUCTION

In this egregiously frivolous case, Plaintiff Sandra Lee ("Lee" or "Plaintiff") is seeking to recover "the fair market value of her residence" following a 2014 foreclosure sale that she considers to be wrongful. But, Sandra Lee has a problem. The subject property is not and was not her residence at the time of the sale (a fact admitted in Paragraph 6 of the Complaint). In fact, she completely relinquished all interest in the property via quitclaim deed on November 25, 2009 – over *four years* before the foreclosure sale. The blatant misrepresentation of Lee's interest in the property, or lack thereof, is a clear violation of Rule 11. She unquestionably lacks standing. In addition, the Complaint fails to state a claim upon which relief can be granted. This Court should immediately dismiss this case.

53193289-1

1

**STATEMENT OF FACTS**

This case presents a familiar fact pattern to this Court, as it is one of *four* related cases involving the property at 1244 Mary Helen Drive, Nashville, Tennessee (the "Property"). In the other three cases, William E. Kantz, Jr. ("Kantz") is challenging the foreclosure sale of the Property, which took place in 2014. *See Kantz v. Bank of Am., N.A.*, No. 3:17-cv-00051 (M.D. Tenn.) ("*Kantz III*"); *Fed. Home Loan Mortg. Corp. v. Kantz*, No. 3:15-cv-00932 (M.D. Tenn.) ("*Kantz II*"); *Kantz v. Rubin Lublin, PLLC*. No. 3:14-cv-01113 (M.D. Tenn.) ("*Kantz I*"). In *Kantz I*, Judge Haynes in a very thorough opinion, held that the foreclosure sale was valid, "Plaintiff's interest in the property was divested, and title is vested in [Freddie Mac]." 2015 WL 1543531, at *23 (M.D. Tenn. Apr. 6, 2015).[1] Despite this pronouncement, Kantz has pressed on and challenged the foreclosure in two subsequent lawsuits. Now, in this *fourth* case regarding the foreclosure sale, Lee, Kantz's former co-owner, is mounting a curious challenge to the sale of the Property, despite voluntarily conveying her interest to Kantz in 2009.

The subject mortgage loan was obtained by Lee and Kantz from Bank of America, N.A. on December 20, 2007, in the original principal amount of $381,800.00. [Doc. 1-1], p. 3, ¶ 5. To secure repayment of this loan, Lee and Kantz conveyed the Property via deed of trust to PRLAP, Inc., as Trustee for Bank of America, N.A. (the "Deed of Trust"). *Id.*; *see also id.* at pp. 18-34. The Deed of Trust was recorded on January 9, 2008, as Instrument No. 20080109-0002774, in the Davidson County Register's Office. *Id.*[2] Bank of America, N.A. appointed Rubin Lublin as

---

[1] A copy of *Kantz I* is attached hereto as **Exhibit "A"**.
[2] The copy of the Deed of Trust is also attached hereto as **Exhibit "B"**, as the copy attached to the Complaint is illegible in many places due to it appearing to be a copy of a copy filed in *Kantz II*. This Court can consider "exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (citations omitted) (internal quotations omitted).

53193289-1

the Substitute Trustee on May 22, 2013, as evidenced by the Appointment of Substitute Trustee, recorded on June 4, 2013, as Instrument No. 20130604-0056186, in the Davidson County Register's Office (the "Appointment"). A true and correct copy of the Appointment is attached hereto as **Exhibit "C"**.

The Complaint represents that Lee "lost her Property," *id.* at p. 11, ¶ 66, that "Defendants' fraudulent conduct allowed [her] real property to be sold without notice and an opportunity for her to redeem the property," *id.* at ¶ 65, and demands for "the fair market value of her residence," *id.* at p. 12, ¶ 70, and the "return of the residence to her," *id.* at p. 11, ¶ 62. Contrary to those representations, she freely admits that "[s]ometime after 2007 Ms. Lee and Mr. Kantz parted ways and Ms. Lee found other living accommodations." *Id.* at p. 3, ¶ 6. However, Lee conveniently omits from her narrative that she did more than simply "find other living accommodations." On November 25, 2009, Lee conveyed her interest in the Property to Kantz via quitclaim deed, recorded on January 25, 2010, as Instrument No. 20100125-0006206, in the Davidson County Register's Office (the "Quitclaim Deed"). A true and correct copy of the Quitclaim Deed is attached hereto as **Exhibit "D"**.[3]

After Lee moved out, she alleges that she "contacted Bank of America seeking to be removed from the underlying mortgage." [Doc. 1-1], p. 3, ¶ 7. There is no indication that this was ever successful. Additionally, she contends that "[a]t all times BOA was aware of [her] physical, mailing, and email address, and her telephone number" and that "[d]uring this time,

---

[3] Pursuant to Fed. R. Evid. 201(c)(2), Rubin Lublin requests that this Court take judicial notice of the Quitclaim Deed. *See* fn.2, *supra* (citing *Rondigo*, 641 F.3d at 681); *see also Kinman v. Wells Fargo Bank, N.A.*, No. 2:12-CV-02853-MCE, 2013 WL 523092, at *1 (E.D. Cal. Feb. 11, 2013) (citing *Santa Monica Food Not Bombs v. City of Santa Monica,* 450 F.3d 1022, 1025 (9th Cir. 2006)) ("[F]acts contained in a public record such as the grant deed are considered appropriate subjects for judicial notice."). Here, the public record is even executed by Lee.

53193289-1

3

[she] maintained a demand deposit account for BOA, and it sent monthly statements to her separate address." *Id.*

Eventually, there was a default on the mortgage loan, and "[s]ometime around 2013, Bank of America notified Mr. Kantz it was accelerating the Note." *Id.* at ¶ 8. According to Lee, "BOA chose not to send [her] a 'notice of acceleration,' a 'notice of default,' or any other notices related to the Note" and "[d]espite actual and constructive knowledge of [her] current mailing address for several years, Bank of America intentionally chose not to send a written notice to her concerning the foreclosure sale." *Id.* at ¶¶ 9, 11.

The facts concerning the foreclosure sale, scheduled for February 20, 2014, are where this case becomes one and the same with *Kantz I* and *II*. As Judge Haynes stated in *Kantz I*, that case "arises out of Plaintiff's allegations that on February 20, 2014, at the Davidson County courthouse, no one on behalf of Defendant Rubin Lublin appeared at the foreclosure sale of Plaintiff's property to cry the sale of the property and that a sale of the property did not occur." 2015 WL 1543531, at *1. Lee sets forth the same allegations here. *See* [Doc. 1-1], p. 4, ¶¶ 13-81. In fact, the Complaints are nearly identical, as both Kantz and Lee are represented by the same attorney.

In short, Lee alleges that Kantz appeared at the Davidson County Courthouse on February 20, 2014, but that nobody ever showed up on behalf of Rubin Lublin, the Substitute Trustee, to conduct the sale. *Id.* After the scheduled time of the sale, "FYI, a junior lienholder, made inquiries to Rubin Lublin about why no one appeared and the sale was not cried." *Id.* at p. 3, ¶ 18. Bret Chaness, an attorney at Rubin Lublin responded via email, advising that "I've been assured that the sale was indeed cried." *Id.* at ¶ 20. Without any facts to support such an assertion, Lee claims that "Mr. Chaness knew or should have known the sale had not been cried

53193289-1

4

Case 3:17-cv-00500   Document 11   Filed 03/16/17   Page 4 of 19 PageID #: 95

when he intentionally made this materially false statement." *Id.* at ¶ 22. Rubin Lublin then executed and recorded a Substitute Trustee's Deed, memorializing the February 20, 2014, sale, and conveying the Property to the Federal Home Loan Mortgage Corporation ("Freddie Mac") for $398,126.15. *Id.* at pp. 53-56.

*Kantz I* was filed on March 25, 2014, and removed to this Court on May 6, 2014. In an attempt to bring that case to a resolution, Judge Haynes stayed the case for 60 days following the Case Management Conference on June 27, 2014. He allowed Kantz "thirty (30) days to arrange the repurchase of the subject property; if Plaintiff does not do so, Defendants will then have an additional thirty (30) days to arrange notice and sale of the property. Parties will then file additional briefing addressing the mootness of certain claims." *See Kantz I*, June 27, 2014 Minute Entry. Freddie Mac, the owner of the Property and the promissory note underlying the Deed of Trust, gave Mr. Kantz an opportunity to satisfy the indebtedness underlying the subject deed of trust in full in exchange for a reconveyance of the property. *See id.* at [Doc. 61-1], ¶ 51. Kantz did not pay this amount and Rubin Lublin, as substitute trustee, held another properly advertised foreclosure sale on August 26, 2014. *See id.* at [Doc. 43]. The results of the February 20 and August 26 sales were exactly the same – the Property was sold to Freddie Mac for $398,126.15. Both Freddie Mac and Rubin Lublin then filed motions to dismiss the case as moot, arguing that if the February 20 sale was invalid, any deficiencies in that sale were cured by the August 26 sale, and that if the February 20 sale was valid, the August 26 sale was a harmless nullity. *See id.* at [Doc. 48, 50]. Judge Haynes agreed, and dismissed the case on April 6, 2015. *See* 2015 WL 1543531.[4]

Despite this finding, Lee raises a number of confusing and disjointed allegations that challenge the propriety of the August 26, 2014, sale that was blessed by this Court. As best as

---

[4] *Kantz I* is currently on appeal at the Sixth Circuit as Case No. 15-5490.

53193289-1

5

can be discerned from the Complaint, Lee makes the assertion – counter to everything else alleged in the Complaint – that the August sale is void because the February sale was valid. *See* [Doc. 1-1], p. 8, ¶ 42. Specifically, Lee claims that the August sale could not have been properly held because the February sale extinguished the Deed of Trust and the authority of the Substitute Trustee to act under it. *Id.* It also appears that Lee is contending that Bank of America, N.A. could not have held the sale as the holder of the promissory note because Freddie Mac was the owner of the note. *See id.* at ¶¶ 36, 37, 43, 45-48. And despite zero allegations in the Complaint to this effect, Lee asserts that the August sale was invalid because the deed evidencing the sale "falsely claims Bank of America, N.A. is or was the holder of the Note in August 2014."[5] *Id.* at p. 10, ¶ 10.

Based on these allegations, Lee sets forth three counts – 1) fraud and constructive fraud; 2) breach of contract; 3) violation of the Tennessee Consumer Protection Act; and 3) conspiracy. Although she had no interest in the Property on the date of the foreclosure sale, Lee is attempting to recover over $250,000.00 in compensatory damages. However, one cannot be compensated for losing something one never had to begin with. Lee lacks standing to bring this lawsuit and has failed to state a claim upon which relief can be granted.

---

[5] Given the confusing way in which allegations concerning the owner and holder of the promissory note are pleaded, it is not entirely clear how this ties into any claim. However, it is irrelevant that Freddie Mac claimed to be the owner while Bank of America claimed to be the holder. Under the Uniform Commercial Code, one entity can be the holder, while the other can be the owner. *See* Report of the Permanent Editorial Board for the Uniform Commercial Code, Application of the Uniform Commercial Code to Selected Issues Relating to Mortgage Notes, November 14, 2011, at 6, http://www.uniformlaws.org/Shared/Committees_Materials/PEBUCC/PEB_Report_111411.pdf, at p.8 (last visited March 15, 2017). In short, the owner and holder do not need to be the same entity, and only the holder has the authority to enforce the note. *Id.*; *see also* Tenn. Code Ann. § 47-3-301. Thus, it was entirely consistent with the UCC for Freddie Mac to be the owner and Bank of America to be the holder.

53193289-1

**ARGUMENT AND CITATION OF AUTHORITY**

*1. Rule 12(b)(1)*

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) can take two forms – a facial attack and factual attack. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction" while a "factual attack challenges the factual existence of subject matter jurisdiction" and "a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists . . . ." *Id.* The "Plaintiff bears the burden of establishing that subject matter jurisdiction exists." *Id.* (citing *DLX, Inc. v. Commonwealth of Ky.*, 381 F.3d 511, 516 (6th Cir. 2004)); *see also Johnston v. Geise*, 88 F. Supp. 3d 833, 837 (M.D. Tenn. 2015).

*2. Rule 12(b)(6)*

This Court may grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) if the complaint does not state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). In considering a motion to dismiss, the Court must treat all well-plead allegations of the Complaint as true. *Id.* However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). "Rule 8 marks a notable and generous departure from

53193289-1

7

Case 3:17-cv-00500   Document 11   Filed 03/16/17   Page 7 of 19 PageID #: 98

the hyper-technical code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

**B.     LEE CONVEYED HER INTEREST IN THE PROPERTY TO KANTZ AND THEREFORE LACKS CONSTITUTIONAL STANDING**

"A party seeking to invoke the court's subject matter jurisdiction must establish the necessary standing to sue before the court may consider the merits of that party's cause of action." *Johnston*, 88 F. Supp. 3d at 840. In order to establish Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (citations omitted). Lee cannot satisfy any of the three elements.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* "A 'concrete' injury must be '*de facto*'; that is, it must actually exist. *Id.* As at least one other federal court has recognized, a plaintiff who signed a promissory note and deed of trust is stripped of Article III standing to challenge a foreclosure sale if that plaintiff conveyed their interest in the property prior to the foreclosure. *See Matulka v. M & T Bank*, No. 8:12CV236, 2013 WL 991668, at *3 (D. Neb. Mar. 12, 2013).[6]

Here, Lee conveyed her interest[7] to Kantz over *four years* before the foreclosure sale. As such, Lee cannot claim that she suffered any injury as a result of a foreclosure. The entire

---

[6] A copy of *Matulka* is attached hereto as **Exhibit "E"**.
[7] When Lee executed the Deed of Trust, she conveyed her legal title in the Property to PRLAP, Inc. as Trustee, and retained equitable title, subject to repayment of the debt. *See Howell v.*

53193289-1

8

Complaint centers on damages from the loss of the Property at foreclosure, and Lee complains that she "lost her Property," [Doc. 1-1] at p. 11, ¶ 66, that "Defendants' fraudulent conduct allowed [her] real property to be sold without notice and an opportunity for her to redeem the property," *id.* at ¶ 65, and demands "the fair market value of her residence," *id.* at p. 12, ¶ 70, and the "return of the residence to her," *id.* at p. 11, ¶ 62. In short, she claims that her injury is a loss of the Property. This alleged injury belongs only to those with an interest in the Property, and Lee is not one of those. *See Matulka*, 2013 WL 991668, at *3. And because Lee had no interest in the Property at the time of the foreclosure sale, there is no redressable injury, as a rescission of the sale would not place Lee back in title, and an award of "the fair market value of her residence" is impossible, since there is no "residence" or other property belonging to Lee at issue in this case. *See, e.g., id.* Accordingly, Lee lacks Article III standing and this entire case should be dismissed under Rule 12(b)(1).

## C. LEE HAS FAILED TO STATE A CLAIM FOR FRAUD IN COUNT I

Even if Lee had demonstrated that she has Article III standing, she has still failed to state a claim upon which relief can be granted. In Count I, Lee contends that

> Rubin Lublin committed intentional and willful fraud by their failure to comply with the Deed of Trust's requirements, including, but not limited to notice, proper crying of the sale, pre- and post-sale deception concerning the alleged sale, and the immediate sale/transfer of interest in the property to [Freddie Mac] (an insider) at a prices [*sic*] grossly below its non-fair market value, but at a profit for itself.

[Doc. 1-1], p. 11, ¶ 67.

"Actions for fraud contain four elements: (1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, and (3) an injury caused by reasonable reliance on the representation. The fourth element requires that the misrepresentation

---

*Tomlinson*, 228 S.W.2d 112, 116 (Tenn. Ct. App. 1949); *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014) (citation omitted).

involve a past or existing fact or, in the case of promissory fraud, that it involve a promise of future action with no present intent to perform." *Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992) (citing *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat'l Ass'n*, 835 S.E.2d 25, 29 (Tenn. Ct. App. 1992)). The circumstances constituting a claim for fraud must be pleaded with particularity pursuant to Fed. R. Civ. P. 9(b). "[T]o satisfy Rule 9(b), a plaintiff must (1) specify the time, place, and content of the alleged misrepresentation, (2) identify the fraudulent scheme and the fraudulent intent of the defendant, and (3) describe the injury resulting from the fraud." *Thompson*, 773 F.3d at 751 (citing *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008)).

Here, the elements of fraud do not even need to be evaluated because Lee is doing nothing more than attempting to convert a breach of contract claim into a fraud claim. As Lee herself admits, the fraud claim is based on "failure to comply with the Deed of Trust requirements." [Doc. 1-1], p. 11, ¶ 67. In fact, Count II, for breach of contract, is based on the exact same allegations. *Compare id.* at ¶ 67 *with id.* at ¶ 74. "Conduct constituting breach of contract becomes tortious only when it also violates a duty, independent of the contract, arising from wider principles of social responsibility." *Thomas & Assocs., Inc. v. Metro. Govt. of Nashville*, No. M2001-00757-COA-R3-CV, 2013 WL 21302974, at *6 (Tenn. Ct. App. June 6, 2003) (citations omitted).[8] No such duty exists here. "Tennessee law does not impose common law duties on financial institutions with respect to their customers, depositors, or borrowers." *Silvestro v. Bank of Am., N.A.*, No. 3-13-0066, 2013 WL 1149301, at *4 (M.D. Tenn. March 19, 2013) (citing *Permobil, Inc. v. American Exp. Travel Relates Services Co., Inc.*, 571 F. Supp. 2d 825, 842 (M.D. Tenn. 2008); *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923,

---

[8] A copy of *Thomas* is attached hereto as **Exhibit "F"**.

932 (6th Cir. 2006)).⁹ While Rubin Lublin is not a financial institution, it is the agent of the creditor as the substitute trustee. *Dillard v. Bank of Am., N.A.*, No. 13-12253-JDT-dkv, 2013 WL 4590541, at *10 (W.D. Tenn. Aug. 28, 2013).¹⁰ Thus, Rubin Lublin owed Lee no duties outside of the terms of the Deed of Trust and any alleged violation of these terms cannot constitute a tort as a matter of law. Count I should be dismissed.

In addition to that fact that Count I cannot be based on a breach of contract, Lee has failed to plead any facts – let alone with particularity – that show Rubin Lublin defrauded her. Initially, Lee has not shown the existence of an intentional misrepresentation made directly to her. All of her allegations concern communications with a third party lienholder or statements within a recorded deed. *See* [Doc. 1-1], pp.11-12, ¶ 68. Only under limited circumstances can a plaintiff prevail on a fraud claim for statements made to third parties.

> The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved.

*Davis v. McGuigan*, 325 S.W.3d 149, 159 (Tenn. 2010).

Here, there are absolutely no allegations that Rubin Lublin made any misrepresentations with any intention or expectation that they would "influence [Lee's] conduct in the transaction or type of transaction involved." This is especially true because Lee had no interest in the Property, so it is entirely implausible that such an intention or expectation would be present here. Moreover, there are absolutely no facts alleged that Lee relied on the alleged misrepresentations that she believes were made. In fact, the word "reliance" or "rely" do not appear at all within Count I. This is likely because there simply was no reliance – justified or otherwise. For the

---
⁹ A copy of *Silvestro* is attached hereto as **Exhibit "G"**.
¹⁰ A copy of *Dillard* is attached hereto as **Exhibit "H"**.

same reason, she cannot claim to have been damaged. There are no factual allegations of damages – another necessary element – only a conclusory request for damages is "in the amount of the fair market value of her residence, additional compensatory as may be proven at trial, and reasonable attorney's fees and costs as permitted under the Deed of Trust and Tennessee law." [Doc. 1-1], p. 12, ¶ 70. This is both insufficient under Rule 9(b) and factually impossible, since Lee cannot claim damages based on the value of lost property that she never owned to begin with. In the absence of any allegations, pleaded with particularity, that show that a fraud were perpetrated on her, Lee cannot state a fraud claim and Count I must be dismissed.

**D.     LEE HAS FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT**

In Count II, Lee asserts that Rubin Lublin breached the terms of the Deed of Trust "by failing to comply with the Deed of Trust's clear and exact post-invocation of the deed's 'power of sale' provisions." [Doc. 1-1], p. 13, ¶ 74.

> These violations at the February 20, 2016 [*sic*] and August 26, 2014 foreclosure sales, include but are not limited to, failure to give notice of the Note's default, failure to give notice of the Note's acceleration, and failure to give notice of the pending foreclosure sale, non-existent and/or improper crying of the sale, post-February sale refusal to identify the true Note holder, and post-sale misrepresentation concerning the sale. Ms. Lee was further denied her rights under the Deed of Trust's ¶¶ 19 & 22 which grants her the right to 'cure defaults' and 'reinstate' the Note after acceleration.

*Id.*

"The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006) (citations omitted). Lee has failed to plead the requisite elements, especially damages.

    1.   *There is no contract between Lee and Rubin Lublin*

The breach of contract claim fails immediately as to Rubin Lublin because there is no contract between Lee and Rubin Lublin. Although it does not appear that Tennessee courts have analyzed the issue, the other courts that have, have concluded that a substitute trustee under a deed of trust is not subject to a breach of contract claim because it is not considered to be a party to the contract. *Bryant v. Wells Fargo Bank, Nat. Ass'n*, 861 F. Supp. 2d 646, 650-651 (E.D.N.C. 2012) (applying North Carolina law); *Lettenmaier v. Fed. Home Loan Mortg. Corp.*, No. CV-11-156-HZ, 2011 WL 1938166, at *8 (D. Or. May 20, 2011), *supplemented*, No. CV-11-156-HZ, 2011 WL 3476661 (D. Or. Aug. 8, 2011) (citing *Rinehart v. Onewest Bank, FSB,* No. CV–10–6331–AA, 2011 WL 1311839, at *2 (D. Or. Apr. 1, 2011)) (applying Oregon law). The conclusion should be the same under Tennessee law, which provides that "[w]ritten contracts whose terms are plain and unambiguous should be enforced according to their plain terms." *Vargo v. Lincoln Brass Works, Inc.*, 115 S.W.3d 487, 494 (Tenn. Ct. App. 2003) (citations omitted).

Here, the plain terms of the Deed of Trust – specifically the only ones which reference the duties of a trustee – are found under the section titled "NON-UNIFORM COVENANTS." *See* Ex. B, at p. 13. This section provides that "Borrower and Lender further covenant and agree as follows:." *Id.* There are no covenants between the trustee and Borrower. In the absence of such covenants, Lee is unable to state a claim for breach of contract against Rubin Lublin and Count II should be dismissed.

2. *Lee cannot claim to have been damaged*

Even if an enforceable contract existed between Lee and Rubin Lublin, she cannot claim to have been damaged. Without any factual allegations concerning how she has been damaged, Lee "requests actual damages of $250,000.00, punitive damages, return of her residence, and

reasonable attorney's fees and costs as permitted under Tennessee law." [Doc. 1-1], p. 14, ¶ 80. These are simply conclusory allegations, devoid of any proper factual enhancement in line with *Twombly* and *Iqbal*, and therefore Lee has failed to state a claim. However, Lee is completely unable to ever show the existence of damages because she had no interest in the Property at the time of the foreclosure sale.

> The purpose of assessing damages in a breach of contract suit is to place the plaintiff, as nearly as possible, in the same position he would have been in had the contract been performed. However, it is well settled law that the injured party is not to be put in a better position by recovery of damages for breach of contract than he would have been in if the contract had been fully performed.

*Kantz I*, 2015 WL 1543531, at *23 (quoting *Action Ads, Inc. v. William B. Tanner Co., Inc.*, 592 S.W.2d 572, 575 (Tenn. Ct. App. 1979)).

Lee lost nothing by the foreclosure sale because she had no interest in the Property to lose, and therefore any award of damages for breach of contract would put her in a better position than she was in previously, in direct contravention of Tennessee law. This is especially true because Lee is claiming "return of her residence" as part of her damages. Lee has not suffered any damages, and therefore has failed to state a claim for breach of contract. Count II should be dismissed.

### E. LEE HAS FAILED TO STATE A CLAIM FOR A VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT

In Count III, Lee alleges that Rubin Lublin violated the Tennessee Consumer Protection Act when it allegedly "misrepresented to Ms. Lee and to the public at large it had 'conducted a foreclosure on real property,' when it had actual and constructive knowledge it did not conduct a sale on February 20, 2014, and had no authority to conduct a sale on behalf of Bank of America on August 26, 2014." [Doc. 1-1], p. 14, ¶ 83. Tenn. Code Ann. § 47-18-104 of the Tennessee Consumer Protection Act ("TCPA"), states:

(a) Unfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices and are Class B misdemeanors.
(b) The following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:
…
(39) Representing that a person, or such person's agent, authorized designee or delegee for hire, has conducted a foreclosure on real property, when such person knew or should have known that a foreclosure was not actually conducted on the real property.

If a violation of the TCPA is proven, a plaintiff is entitled to "recover actual damages" but only when he or she suffers an "ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated." Tenn. Code Ann. § 47-18-109(a)(1); *see also Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (citing Tenn. Code Ann. § 47-18-109(a)(1)). A claim under the TCPA is essentially a claim of fraud and must be pleaded with the particularity under Rule 9(b). *See Humphries v. West End Terrace, Inc.*, 795 S.W.2d 128, 132 (Tenn. Ct. App. 1990); *see also* Donald F. Paine, *The Tennessee Consumer Protection Act*, TENNESSEE BAR JOURNAL, June 2014, at 30. The claim here fails for three reasons –1) the claim related to the February sale is moot; 2) the August sale was conducted; and 3) Lee cannot claim any damages.

1. *The TCPA claim is moot as it relates to the February sale and the Lee cannot state a claim based on the August sale because it was undisputedly conducted*

Initially, the claim is moot as it relates to the February sale date. As Judge Haynes noted in *Kantz I*,

> assuming the February sale was defective, the only ascertainable loss that Plaintiff could have suffered was the loss of his real property. Yet, the August sale was undisputedly conducted, and thus, Plaintiff fails to show he suffered an "ascertainable loss" as a result of the allegedly faulty February foreclosure sale. Accordingly, the Court concludes that Plaintiff's TCPA claim should be denied as moot.

*Kantz I*, 2015 WL 1543531, at *17.

The exact same reasoning applies here, and also serves to nullify Lee's claim as it relates to the August sale date. Lee claims that the August sale violated the TCPA because Rubin Lublin "had no authority to conduct a sale on behalf of Bank of America on August 26, 2014." [Doc. 1-1], p. 14, ¶ 83. Lee's allegations as to why the August sale was invalid are incomprehensible. Nonetheless, she admits that the sale was conducted, which is all that the TCPA requires. Whether the sale had any infirmities is not covered by the TCPA, and therefore Count III fails as a matter of law and should be dismissed.

2. *Lee cannot claim any damages for a TCPA violation*

Even if Lee had stated plausible and non-moot allegations in support of a TCPA violation, she had failed to show that she is entitled to any damages, which is fatal to her claim. The TCPA authorizes a private cause of action only to

> Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47–18–104(b) and declared to be unlawful by this part.

Tenn. Code Ann. § 47-18-109(a).

Like her breach of contract claim, Lee claims, without any factual enhancement, that she is entitled to "actual damages of $250,000.00, and punitive damages as permitted under the [TCPA] and/or the trebling of her compensatory damages, and reasonable attorney's fees and costs as permitted under the Fair Debt Collection Practices Act [*sic*]." *Id.* at p. 15, ¶ 87. Again, this is a conclusory allegation that fails to satisfy not only *Twombly* and *Iqbal* requirements, but the particularity required by Rule 9(b). Moreover, the undisputed fact that Lee had no interest in the Property to lose through foreclosure lead to the conclusion that she cannot claim any ascertainable loss, as "the only ascertainable loss that Plaintiff could have suffered was the loss

of [ ] real property." *Kantz I*, 2015 WL 1543531, at *17. Accordingly, Lee has failed in all respects to state a claim for a violation of the TCPA, and Count III should be dismissed.

### F. LEE HAS FAILED TO STATE A CLAIM FOR A CONSPIRACY

The final count in the Complaint is for conspiracy. [Doc. 1-1], p. 15 ¶¶ 88-95. "An actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff. Upon a finding of conspiracy, each conspirator is liable for the damages resulting from the wrongful acts of all co-conspirators in carrying out the common scheme." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002) (internal citations omitted) (citation omitted). However, "a civil conspiracy is not legally possible where a corporation and its alleged co-conspirators are not separate entities, but instead stand in a principal-agent relationship." *Id.* (citing 16 Am. Jur. 2d *Conspiracy* § 56 (1998)). Additionally, a conspiracy requires a finding of liability for an underlying tort, as a conspiracy claim cannot stand alone. *Kantz I*, 2015 WL 1543531, at *20 (citing *Lane v. Becker*, 334 S.W.3d 756, 764 (Tenn. Ct. App. 2010). Claims of conspiracy must be pleaded with particularity pursuant to Rule 9(b). *Hagen v. U-Haul Co. of Tenn.*, 613 F. Supp. 2d 986, 996-97 (W.D. Tenn. 2009); *see also Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010) ("Conspiracy claims must be pled with some degree of specificity.").

Here, Lee admits that Rubin Lublin was acting as an agent of Bank of America, [Doc. 1-1], ¶¶ 74, 83, 85, and "a civil conspiracy is not legally possible where a corporation and its alleged co-conspirators are not separate entities, but instead stand in a principal-agent relationship." *Trau-Med of Am*, 71 S.W.3d at 703. Additionally, all of Lee's underlying tort claims against Rubin Lublin fail as a matter of law, so there can be no conspiracy standing alone.

*Kantz I*, 2015 WL 1543531, at *20. Thus, Lee has failed to state a claim for a conspiracy and Count IV should be dismissed.

## CONCLUSION

Based on the foregoing, Rubin Lublin respectfully requests that this Court grant its Motion to Dismiss.

Respectfully submitted this 16th day of March, 2017.

        **HALL BOOTH SMITH, P.C.**

By:   */s/ H. Buckley Cole*
      H. Buckley Cole (BPR No. 11811)
      Fifth Third Center
      424 Church Street, Suite 2950
      Nashville, Tennessee 37219
      (615) 313-9911 (telephone)
      (615) 313-8008 (facsimile)

      *Attorney for Rubin Lublin TN, PLLC*

53193289-1

18

Case 3:17-cv-00500   Document 11   Filed 03/16/17   Page 18 of 19 PageID #: 109

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this 16th day of March, 2017, filed the within and foregoing by CM/ECF, which will service notice of same on all parties.

                              **HALL BOOTH SMITH, P.C.**

                By:    */s/ H. Buckley Cole*
                         H. Buckley Cole (BPR No. 11811)